# The Farmers' Bank of Reading *against* Strohecker.

When a witness is called to state a particular fact, it is improper to lead him to a full statement of the defendant's case which is not yet opened to the court and jury; but it is not error to permit him to answer on his cross examination a single question closely connected with what he has proved, even if the answer operate in favour of the party putting the question.

Testimony, merely irrelevant or immaterial, properly rejected. Circumstances that will aid or control an illegal or insufficient execution of a power of attorney.

ERROR to the common pleas of *Berks* county.

The Farmers' Bank of Reading against Leah Strohecker.

This was an issue under the act of the 16th of April 1827, to try the right of the Farmers' Bank of Reading to the money in court, which arose out of the sale of the real estate of John Garber, deceased, viz:

IX.—V

The plaintiffs, to maintain the said issue on their part, gave in evidence a petition dated the 14th of April 1819, of David Garber, the oldest son and heir at law of the said John Garber, deceased, to the orphans' court of Berks county, praying the said court to award an inquest to value and appraise the real estate of the said John Garber, deceased, who died intestate, on the 14th of March 1819, leaving issue six children, to wit: David, the petitioner, John, Leah, the wife of Daniel Strohecker, Sarah, the wife of Michael Fisher, Susan, the wife of Samuel Deem, and Elizabeth, the wife of William Sharman.

The inquisition awarded upon the said petition, finding that the real estate of the said deceased will accommodate the six children, valuing and appraising tracts " C" and " H" by the acre, amounting to 10,668 dollars and 25 cents, which said inquisition was read and confirmed on the 6th of August 1819.

"August 6th 1819, tracts ' H' and ' T' adjudged to William Sharman, attorney in fact of Daniel Strohecker, *in trust for the* said Daniel Strohecker." Same day another entry, where tracts are apportioned, " adjudged to William Sharman in behalf of Daniel Strohecker."

Also, a recognizance, dated the 6th of August 1819, by William Sharman, attorney for Daniel Strohecker, intermarried with Leah Garber, one of the daughters of John Garber, deceased, for 21,000 dollars. Conditioned that if the said William Sharman, his heirs, executors, &c., to pay the other heirs their respective shares, &c.

And a deed, dated the 28th of February 1820, for tracts C and H, from Daniel Strohecker and Leah his wife, to William Sharman, in consideration of 10,668 dollars and 25 cents, acknowledged same day, before William Nesbit, Esquire, reciting the proceedings in the orphans' court, &c.

The plaintiffs then gave in evidence the following bond:

Know all men by these presents, that I, William Sharman, intermarried to Elizabeth, one of the daughters of John Garber, deceased, am held, &c., unto Daniel Strohecker, who is married to Leah, one other of the daughters of the said deceased, in the sum of 3860 dollars and 49 cents, to be paid to Daniel Strohecker, or his certain attorney, &c. Sealed and dated the 6th of August 1819.

" Whereas, such proceedings were had this day, and at divers other times before, in the orphans' court of the said county of Berks, relating to the said real estate of the said John Garber, deceased, that, upon a writ of partition or valuation awarded by the court, an inquest valued the part of the real estate at the sum of 10,686 dollars and 25 cents, in gold and silver money. And further, upon the said William Sharman, taking the said part of the real estate at the valuation aforesaid, it was ordered by the said court, that the said William Sharman enter into a recognizance to secure to the other children and heirs of the said John Garber, deceased, their respective shares and dividends of and in the said valuation;

[The Farmers' Bank of Reading v. Strohecker.]

which recognizance being entered into in open court by the said William Sharman, it was ordered that the said William Sharman should hold and enjoy the real estate aforesaid, valued as aforesaid, to him, his heirs and assigns forever, according to law, &c., as by the records of the said court appears, &c.

" Now the condition of this obligation is such, that if the above named William Sharman, his heirs, executors, or administrators, or any them, shall and do well and truly pay, or cause to be paid, unto the above named Daniel Strohecker, or to his certain attorney, executors, administrators, and assigns, or any of them, the just and full sum of 1903 dollars and 24 cents, together with lawful interest, in one year from the date hereof, without fraud or delay, then this obligation to be void and of no effect, otherwise to be and remain in full force and virtue."

Also, the record of a suit to November term, 1820, No. 134, on the said bond. Daniel Strohecker to the use of the Farmers' Bank of Reading *v.* William Sharman. Debt on bond not exceeding 3000 dollars.

April 9th 1821, judgment, *fieri facias* to January term, 1824, levied on real estate, tract C, and 20 acres of woodland but not condemned.

January 12th 1824, affidavit of defendant filed and rule to open judgment, to remain as security, and proceedings to stay; April 17th 1824, rule made absolute, action to be tried on its merits; April 4th 1835, death of William Sharman, suggested, and administrators substituted; August 10th 1835, death of Daniel Strohecker suggested, and his administrators substituted; same day, verdict for plaintiff, 2685 dollars and 81 cents; August 11th, judgment *nisi*.

The record of a suit to January term, 1825, to No. 183 common pleas. John Strohecker *v.* Daniel Drenkle, administrator *de bonis non* of John Garber. April 26th 1827, verdict for plaintiff for 7919 dollars and 35 cents. Also, a *fieri facias* to December term, 1827.

Alias *fieri facias* to December term, No. 2, on which was a credit endorsed for 6648 dollars and 10 cents, in part payment of the verdict and judgment, leaving a balance of 1270 dollars and 25 cents, for which tract C was levied on and condemned.

*Venditioni exponas* to March term, 1830, No. 1, on which the property was sold to Jacob W. Seitzinger for 7400 dollars, of which 5021 dollars is deposited in court at interest.

The sheriff's sale to Jacob W. Seitzinger was made on the 12th of March 1830, and the sheriff's deed was acknowledged on the 26th of April 1830—the return day of the *venditioni exponas* was on the 15th of March 1830.

A release, dated the 18th of March 1826, releasing all claims, &c., to tracts C and H, from the heirs of John Garber, deceasedo William Sharman, read in evidence as to all the heirs excepting Daniel Strohecker and wife.

Power of attorney. Know all men by these presents, that Daniel Strohecker, of Chilisquaque township, Northumberland county, yeoman, and Leah his wife, have authorised and empowered, and by these presents do authorise and empower John Strohecker, of the borough of Reading, Berks county, for them in their name to assign, transfer, and set over to the Farmers' Bank of Reading, a certain bond dated the 6th of August 1819, of 1903 dollars and 24 cents, or thereabout, payable in one year thereafter, with the interest, from William Sharman to said Daniel Strohecker, both intermarried with the daughters, and heirs of John Garber, deceased, in satisfaction of part or in the whole (as the case may be) of a note due said Farmers' Bank, by the said John Strohecker, and further to do, execute, perform and finish all and singular the acts, matters and things which shall be expedient and necessary, touching and concerning the premises, as fully and effectually to all intents and purposes whatsoever, as they the said Daniel Strohecker and Leah his wife, or either of them, might or could do in and about the same being personally present, and whatsoever he, the said John Strohecker, shall lawfully do, or cause to be done, in and about the premises, by virtue of these presents, they do hereby ratify, allow and confirm; in witness whereof, the said parties to these presents have hereunto set their hands and seals the 31st day of August 1820.

Benjamin Davis, being duly affirmed, testified as follows: Daniel Strohecker had a note in bank on 18th of December 1815, amount was 2050 dollars, endorsed by John Strohecker and John Garber; the note was renewed by John Strohecker about a year following, and from time to time. In 1820 John Strohecker gave his note for 1672 dollars, with one of the young Garbers on, I think it was John Garber; this note was due on the first of August 1820. John Strohecker was the payer of the note then, was paid off on the 14th of September 1820. I have examined the bank; this note is not in bank; there is none in but the forty-five dollar note.

*Cross-examination.* The following year John Strohecker was the drawer, and John Garber the endorser; after Garber died young John Garber endorsed the note. And the said Banjamin Davis on his further cross-examination testified as follows: I do not recollect of the parties saying any thing about the money or to what purpose it was applied. I may have said that my impression was that the money was to pay for land purchased of Grant.

To which evidence so given by the said Benjamin Davis on his further cross-examination, the said plaintiff did object and prayed the court to overrule the same. The court overruled the objection and admitted the evidence, to which decision of the court the plaintiff excepted.

Benjamin Davis, continued. John S. Hiester was the cashier of the bank in 1815. I was then a clerk in the bank and am still.

John S. Hiester being duly sworn, testified as follows: I am a

[The Farmers' Bank of Reading v. Strohecker.]

subscribing witness to the assignment on bond, and saw it executed by John Strohecker; old John Strohecker called on me as cashier of the bank in August or September 1820, to assign this bond to the bank, in payment of his debts or notes he owed to the bank, provided they would allow him 80 dollars out of the bond. He wished his proposal laid before the directors. I took the bond and laid it before the board at their next meeting; they agreed to it and left the remainder to be completed by the officers of the bank. I told Strohecker they had agreed; he came there and executed the assignment. After the assignment I took the bond and applied it to the payment of two notes, and paid him the 80 dollars; and, to the best of my recollection, a small balance was applied to a third note; I think the two notes were cancelled and given up to John Strohecker; the bond was taken in payment of the notes and not as a collateral security; a note was made on the minute. One note was 1672 dollars, interest 1 dollar 40 cents; one note 140 dollars, interest 36 cents, together 1813 dollars 76 cents—bond 1903 dollars 24 cents—I gave Strohecker 80 dollars—left 9 dollars 48 cents. This I think was applied to a third note of 1445 dollars, (minute read;) the power of attorney must have been before the board from the entry, but I have no recollection that it was; I think I gave up the notes; resolution of the board was that they should be given up.

The plaintiff offers to prove that, after John Strohecker had offered to assign the bond to the bank, and before the same was assigned, the said Farmers' Bank of Reading called on William Sharman the obligor, and desired to know whether in case said Bank took an assignment of the bond, he, the said William Sharman, would pay it; that said Willian Sharman declared that he had no defence to the bond, and promised the said Bank that, in case they took an assignment of the bond, he would pay the amount of said bond to the Bank, and that, in consequence of this promise of the obligor, the Bank took an assignment of the bond in payment of John Strohecker's note or notes, to which the defendant objected. The court sustained the objection and overruled the evidence, to which decision of the court the plaintiff excepted.

The assignment on the bond dated September 14th, 1820, proved by John S. Hiester, read in evidence.

For a valuable consideration to me in hand paid by the Farmers' Bank of Reading, and by virtue of a letter of attorney from Daniel Strohecker and Leah Strohecker his wife to me, dated the 31st day of August, A. D. 1820, and duly recorded in the office for recording of deeds, &c., at Reading, Berks county, in book A. vol. 31, page 415, I do assign and set over the within obligation, and all moneys due and to become due thereon unto the Farmers' Bank of Reading aforesaid, and their assigns; and in case the same cannot be recovered of the within-named William Sharman, then I do promise and agree to pay the amount thereof, together with all charges thereupon

IX.—V*

accruing, unto the Farmers' Bank of Reading aforesaid, or their assigns. Witness my hand and seal, September 14th, A. D. 1820.]

JOHN STROHECKER, [ L. S. ]

Sealed and delivered in the presence of us, THOMAS CHADWICK, JOHN S. HIESTER.

Defendant having opened his case, again called Benjamin Davis as a witness, who testified as follows: John Strohecker owns twenty-eight shares of stock in the Farmers' Bank of Reading; they belong to his estate, and are in his name yet. He was an original stockholder; 30 dollars are paid on each share; the shares were 50 dollars each. Strohecker's estate owes us now a note of 45 dollars, and interest from the 12th of January 1835. Twenty-one dividends are not paid over, none paid since November 1829; dividends amount to 676 dollars 20 cents, the interest on the dividends up to this time amounts to two hundred and odd dollars. To which evidence the plaintiffs objected, and prayed the court to overrule and reject the same; the court overruled the objection and admitted the evidence —to which decision of the court the plaintiffs excepted.

Benjamin Davis, continued. William Sharman paid to Bank on his bond, on the 1st of April 1822, 300 dollars; on the 18th of April 1822, 200 dollars; and on the 28th of November 1822, 250 dollars. The debt of John Strohecker of 45 dollars originated in 1814. Daniel Strohecker never was on this note, nor on the 140 dollar note.

The defendant then offered in evidence a deed, dated and acknowledged in Northumberland county, on the 14th day of June 1816, from George Grant, William Grant and Deborah Grant, executors of Thomas Grant, to John Garber and John Strohecker, for 275 acres and 61 perches of land, for the consideration of 16,503 dollars 32 cents, to which the plaintiffs did then and there object, and prayed the court to overrule the same; the court overruled the objection and admitted the deed in evidence, to which decision of the court the plaintiffs excepted.

Deed read in evidence.

The defendant then offered in evidence the deposition of George Grant, (which is copied into the opinion of the court;) the plaintiff objected to it, but the court overruled the objection and sealed a bill of exception.

John Garber being duly sworn, testified as follows: In 1820 I had no property; my father's estate had a large claim against Grant's estate at that time. My father died in March 1819; in 1820 my father's estate was considered large, considered good. Daniel Strohecker died in August 1821. We got once a thousand dollars from Grants.

The plaintiff offered to prove, in the cross-examination, of the witness, that he, the witness, is now solvent and able to pay, to which defendant objected; the court sustained the objection and overruled the evidence, to which decision of the court the plaintiffs excepted.

Errors assigned:

1. The court erred in admitting the evidence mentioned in the first bill of exceptions.

2. The court erred in rejecting the testimony mentioned in the second bill of exceptions.

3. The court erred in admitting the evidence mentioned in the third bill of exceptions.

4. The court erred in admitting in evidence the deed mentioned in the fourth bill of exceptions.

5. The court erred in admitting in evidence the testimony mentioned in the fifth bill of exceptions, (George Grant's deposition.)

6. The court erred in rejecting the testimony mentioned in the sixth bill of exceptions.

7. The court erred in charging the jury, that the power was not in the name of the principals, and did not divest their legal interest in the bond.

8. The court erred in charging the jury, that if the debt, at the time of the assignment, was the debt of Daniel Strohecker, and the note was given up and cancelled, then the plaintiffs would be entitled to recover, otherwise the plaintiffs would not be entitled to a verdict.

9. The court erred in refusing to charge the jury that if the bank gave up the notes, the plaintiff was entitled to recover.

10. The court erred in not charging the jury that the plaintiffs are entitled to recover the amount of the 1672 dollar note and interest, after crediting the 752 dollars paid by William Sharman on the land.

*Smith* and *Mallory*, for plaintiff in error.
*Hoffman* and *Greenough*, for defendant in error.

The opinion of the court was delivered by

Houston, J.—This case has been twice before this court, see 6 *Watts*, 96, and 8 *Watts* 188. At the first trial most of the facts now in evidence were given, but all the points made now, were not then raised: at the second trial, the whole case was not gone into. The statement in the first report will show that this court did not decide all the points which arose in the second and in this trial. It very often occurs that on a second trial, evidence is adduced not known of, or not produced at the first. The facts will then be different; and of course the law which always depends on the facts, may be different; or, as occurred in this case, points of law may be raised at a second trial not mentioned at the first. At the first trial the power of attorney was objected to, because dated 31st August 1820, and by the almanac that was on Sunday, and a witness swore it was executed on Sunday. There were two witnesses to it, and it was acknowledged the same day before a justice—none of these were called, and for this reason this matter was left

[The Farmers' Bank of Reading v. Strohecker.]

for further proof, as the case was to go back, for other reasons stated in the opinion. When it came back, we heard no objection to the execution by Daniel and Leah Strohecker—but objection was made to the manner in which John Strohecker acting under that power executed the assignment of the bond—and it was decided not to be such as to transfer the legal right to the bank.

The bank having only an equitable interest in the bond, the question was made, whether it could take the money in court from Leah Strohecker, to whom, as a daughter of John Garber, the land was bound for her share of his estate, if it was considered as taken by William Sharman—or whose interest in the land remained in her, if it was considered as taken at the appraisement by Daniel Strohecker, her husband—all the heirs of John Garber released to Sharman except Daniel Strohecker and wife.

The bank called Benjamin Davis, now cashier, who proved there was a note put into the bank in December 1815, for 2050 dollars, endorsed by John Garber and John Strohecker—that in the following year John Strohecker was the drawer and John Garber indorser, and in 1820 one of the young Garbers was indorser; the note was renewed from time to time—in 1820, it was for 1672 dollars, and due on the 1st August and was paid off 14th September 1820—and is not now in bank. On his cross examination, he said something about the money having been got first on the note to pay Grant; this was objected to as being improper, as leading to testimony which would be a part of the defence of defendant, and Ellmaker and Buckley were cited. This case seems to have been in great request in that county last year. It may be very improper when a witness is called to state a particular fact, to lead him to a full statement of defendant's case, which is not yet open to the court and jury; but it is not error to permit him to answer on his cross-examination a single question closely connected with what he has proved, even if the answer may make in favor of the party putting the question.

John L. Hiester was called next, and after stating what passed when John Strohecker gave the bond to the bank, he was asked whether the officers of the bank had not called on William Sharman, the obligor in the assigned bond, and he had stated he had no defence to the bond and would pay it if the bank took an assignment of it; this was objected to as irrelevant, was rejected and exception taken; and it was clearly irrelevant. The bank had sued Sharman and got judgment, and he had paid 750 dollars on it; when his land was sold on another judgment, and the money in court, and this a suit about the application of the money, there could be no use in proving what was asked; it was at best an attempt to incumber the case with that which was entirely immaterial.

The assignment of the bond of Sharman, concluded as follows:—
" And in case the same cannot be recovered of the within named William Sharman, then I do promise and agree to pay the amount

[The Farmers' Bank of Reading v. Strohecker.]

thereof, together with all charges thereupon accruing, unto the Farmers' Bank of Reading aforesaid, or their assigns. Witness my hand and seal. September 14, A. D. 1820. Signed and sealed by John Strohecker. Sealed and delivered in presence of two witnesses.

Defendants then opened their case, and called Benjamin Davis again, who stated—John Strohecker owns twenty-eight shares of stock in the Farmers' Bank of Reading, in his own name; he was an original stockholder—thirty dollars have been paid on each share—shares were 50 dollars each—Strohecker's estate owes the bank 45 dollars and interest from 12th January 1835—twenty-one dividends are not paid over, none paid since November 1829—dividends amount to 676 dollars and 20 cents—interest on the dividends to this time exceeds 200 dollars. To this plaintiff objected; the objection was overruled and exception taken. It will be seen by recurring to this case in 8 *Watts* 188, that it was to be inquired into, whether the power of attorney given to assign this bond, was for a good and valuable consideration, or voluntary and without consideration; if the latter, and John Strohecker got the bond without consideration, he had obligated himself to pay the bank, if the money could not be got from Sharman. The bank, by act of assembly, had John Strohecker's stock and dividend bound for this debt, and this suit is in fact to ascertain whether they shall be paid by Leah Strohecker, out of her father's estate not yet received, or by John Strohecker. It was then proper to prove, that the bank had in its hands funds of John Strohecker, who was alleged to be, and who plaintiff undertook to prove, was, the debtor in honesty and conscience. There was no error in receiving the testimony.

The witness continued—William Sharman paid at several times, in April 1822, 500 dollars, and in November 1822, 250 dollars, in all 750 dollars on this bond; when the bond was transferred to the bank, John Strohecker by it paid a note of 240 dollars. Daniel Strohecker was not on that note, nor on the 45 dollar note still due.

So that Daniel was not liable for any of the debts which the bond on Sharman went or was intended to go in satisfaction. Daniel in 1815, was drawer on the large note first given, but on the renewal, it was drawn by John Strohecker, his father, and endorsed by John Garber his father-in-law, and after his death by John Garber the son. Mr Davis had said something about the money being intended to pay Grant. The next two bills of exceptions were to evidence which will be stated, and which conduced to prove, that though Daniel at first entered into articles with Mr Grant, yet it was for his father and father-in-law, who received the deed and paid the money.

Defendant offered a deed from the executors of Mr Grant, dated 14th of June 1816, to John Garber and John Strohecker, for 275 acres and 61 perches of land, for the consideration of 16,503 dollars and 33 cents.

Defendant next offered in evidence the deposition of George

Grant, as follows:—In pursuance of the above rule, &c., &c., &c., being first sworn, doth depose and say:—" Daniel Strohecker first agreed to purchase from my father a tract of land nearly opposite Derrstown, in the county of Northumberland. He paid to my father about 480 dollars, that was all he ever paid. The executors of Thomas Grant (of whom witness was one) made a deed to John Garber and John Strohecker. John Strohecker said he advanced the 480 dollars which Daniel paid on the agreement. The whole consideration amounted to about 16,000 dollars. It was all paid by John Strohecker; Garber and Strohecker told me they got the money out of the bank. When we made the deed, I understood they were joint owners, and each to pay an equal proportion. I never looked to Daniel Strohecker for any part, nor he never paid any part thereafter. John Strohecker never directed me to call on Daniel for any part of the purchase-money. John Strohecker told me he intended to give Daniel part of the above described land for the property he got from Daniel in Schuylkill county."

There was nothing wrong in admitting this testimony, it went to show who got and used the money from the bank, and that Daniel had no interest in it, and it explained why his name was left off, after the purchase was made.

It was proved that the notes of John Strohecker, endorsed by young Garber, and in lieu of which the bond was given, were not now in the bank, and to show that the bank lost nothing as respected the endorser, the defendants called John Garber, who testified, " In 1820, I had no property; my father's estate had a large claim against Grant's estate at that time; my father died in March 1819; my father's estate was considered large, considered good. Daniel Strohecker died in August 1821; we got over 1000 dollars from Grants."

Plaintiff offered to prove by the witness that he is now solvent, and able to pay. This was objected to and overruled, and exception taken. Surely the circumstances of the witness at that time was not at all material; whether he has acquired property at the end of twenty years, could not affect what was done in 1820. Besides the bills of exceptions, errors were assigned to the charge of the court: they may be reduced to two—" The court erred in charging the jury that if, at the time of the assignment of the bond, it was the debt of Daniel Strohecker, and the note was given up and cancelled, the plaintiff would be entitled to recover, otherwise the plaintiff would not be entitled to a verdict; or if the bank gave up the note, yet if Daniel was not liable to pay it, plaintiff would not be entitled to recover." And in not telling the jury that the plaintiffs were entitled to recover the amount of the 1672 dollars, after deducting the 750 dollars paid by Garber.

Charge of the court to the jury.—" The plaintiff asserts a right to the money claimed by virtue of a power of attorney of Daniel Strohecker and wife to John Strohecker. The bond was not legally

[The Farmers' Bank of Reading v. Strohecker.]

assigned. The execution of the power was not in the name of the principals, and did not divest their legal interest in the bond. To divest this interest, the act must be theirs. Thus far the the case is free from difficulty.

" Has any thing been done which would in equity entitle the plaintiffs to the money, in the absence of a legal execution of the power? Was the debt to be paid in bank by the assignment of the bond the proper debt of Daniel? This is an important inquiry in the case. His being originally the drawer of the note, would be *prima facie* evidence that the debt was his, and that John Strohecker, the endorser, was his surety. As between John and Daniel, had it become the debt of John anterior to the assignment? The note was then in John's name. Daniel was not then on the note. John had other notes in bank at this time. The power authorized the assignment of the bond in payment of a note. That is, in payment of one note. Why was it to be applied in payment of one note? May it not have been because the debt was still his debt. You have heard all the evidence on this point, and will decide this fact.

" Was the note in bank given up to John at the time the bond was assigned to the bank? This fact you will also decide. Mr Heister has testified that, to the best of his recollection, the note was cancelled and given up. You will decide this matter.

" If the debt was the debt of Daniel, and the assignment, such as it was, was taken in absolute payment of the note, and it was cancelled and given up, what effect would the assignment of John to pay the bond, if it could not be recovered of Sharman, have on the transaction? If the debt was Daniel's, he would no longer be liable to the bank. The evidence of his indebtedness was given up. He stood no longer their debtor. His discharge was perfect. In equity, if the debt was Daniel's, and the note was given up, that is, if the debt was Daniel's at the time of the assignment, and the note was then given up, the plaintiff would be entitled to recover. In that case it would be but justice to John Strohecker's estate that the plaintiff should recover, and neither Daniel nor his representatives could object to the want of legality, in the execution of the power, nor could his widow object to it after his death. She would be as strongly bound as her husband.

" It is contended that, if the bank gave up the note, then the plaintiff is entitled to recover, whether the debt was then the debt of Daniel or not; and we have been requested so to charge you. I do not think that the law is so, and refuse to charge you as we are requested. We charge you that, if the debt at the time of the assignment was the debt of Daniel, and the note was cancelled and given up, then the plaintiff would be entitled to recover, otherwise the plaintiffs would be entitled to a verdict. In case you find for the plaintiff, credit must be given for the amount that was applied to the payment of the small note, as there is no pretence that this

[The Farmers' Bank of Reading v. Strohecker.]

was the debt of Daniel, and also for the eighty dollars paid to John, as in both cases it was clearly a misapplication of the fund."

The first part of the objection includes and covers the last. On that I need only say, it is in accordance with the opinion of this court in this cause, as reported in 8 *Watts*, to which I refer as the present opinion of this court. And if Daniel was not on the 14th of September 1820 liable to the bank for the 1672 dollar note, surely the bank could not make him liable by any act they could do. It is well remarked in the opinion in 8 *Watts*, that the bank did not seem to rely on the bond or the assignment of it, as they took the personal covenant of John Strohecker in addition to what he did in transferring the bond. They not only have his estate liable on that covenant, but have retained his stock and dividends in their hands.

When Strohecker transferred the bond, beside the note for 1672 dollars, he got up another note for 140 dollars, and received 80 dollars in cash. Garber paid 750 dollars to the bank, making 970 dollars. The bank stock of John Strohecker was 840 dollars. Whether these balanced the whole claim of the bank, or by calculating interest left a small part unpaid, we do not inquire; this was not put to the court and jury, and we will not investigate it.

Judgment affirmed.