## Consolidated Dressed Beef Co., Appellant, v. Philadelphia.

*Contracts—Municipalities—Contract to supply beef—Defalcation—Certificate.*

1. A municipality cannot be estopped by the illegal, neglectful, or dishonest acts of its former officials, and the fact that a contractor has for many years been contracting with a municipality to supply it with beef of a certain quality and has been allowed by such officials to supply beef of inferior grade does not relieve the contractor from the duty of fulfilling its contract in accordance with its plain terms.

2. In an action by a beef supply company against a municipality to recover the contract price of beef, a verdict for the defendant with a certificate is properly directed where it appears that the plaintiff failed and declined to perform the contract in question in accordance with its terms and sought to excuse its default on the sole ground that it and others who had been contracting with the city for meat for many years had been allowed by former officials to overlook the provisions of similar specifications, and it further appearing that the city suffered a loss by such failure of the plaintiff to perform to the amount of the certificate.

Argued March 25, 1914. Appeal, No. 20, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 2, Philadelphia Co., June T., 1912, No. 1606, on directed verdict for the defendant in case of Consolidated Dressed Beef Company v. City of Philadelphia. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Affirmed.

Assumpsit for meat sold and delivered by plaintiff to the defendant city under a duly authorized contract.

HALL, P. J., specially presiding, delivered the following charge:

This is an action brought by the Consolidated Dressed Beef Company, a corporation doing business in this city, against the City of Philadelphia, to recover the sum of $9,263.11 for beef sold and delivered to the City of Philadelphia in the year 1912, under the provisions of a certain contract which was entered into between these parties on the ninth day of January, 1912, in pursuance of a proposal and bid which had been made by the plaintiff company and accepted by the city shortly before. The specifications which were contained in this contract, provided that all beef which was to be furnished the city by the contractor should be steer beef.

A steer is a male member of the bovine family which has been castrated young in life, that is, prior to his arriving at the age of four years, and none of the witnesses who have been upon the stand claim that there is anything ambiguous in this word, but they testify that this is a meaning which is general and is recognized by all members of the trade, and it is not claimed that the word "steer" was used in this contract in any other manner except in its ordinary and usually accepted sense, or that it had in this locality any special trade signification. It appears that the contractor, in carrying out the terms of the contract, instead of furnishing steer meat proceeded to furnish the almshouse with the meat of bulls, cows and stags, and in some instances oxen, and that when this was called to his attention by the proper official of the city he did not deny it, but upon the contrary admitted that he was furnishing this other meat, which appears to have been healthful and fit for eating, but of an inferior and cheaper quality than steer meat, and he informed the director that that was the kind of meat that he proposed to furnish, and said that he had no intention of furnishing steer meat under the contract, and that if he did so it would cost him at least $50,000. The city thereupon annulled this contract, or rescinded this contract, bought

meat in the open market, and finally readvertised and re-let the contract, all of which they had a perfect right to do under the terms of the contract which had been entered into between the city and the plaintiff company, and the result of this was that it cost the city $18,015.90 more for their meat during the balance of that year than it would have cost them if this plaintiff had furnished it at the price at which he had agreed to furnish it. The expense of readvertising was $116.10, which they would also have the right to collect under the terms of the contract. The expense arising to the city therefore from the plaintiff's neglect and refusal to carry out his contract in accordance with the specifications, amounted to $18,132, and deducting from that the $9,263.11 which the city admits they owe to the contractor for beef which he had delivered and they had accepted, he would owe the city the sum of $8,868.89 by reason of his breach of the contract.

The facts in this case are not in dispute, and the only answer or defense which the contractor makes is that for many years before he had been contracting with the city, that both he and the other people had been contracting with the city for meat, and that they had been allowed by former officials to overlook the clear provisions of this specification, and instead of furnishing this higher priced meat called for by the contract, to furnish a lower priced and inferior quality, and for that reason he said he had a right to think, that while he entered into this contract, the contract would not be enforced by the city. That might be a good defense if this were an action between individuals or firms, but it is no defense in an action against the city, because the City of Philadelphia is a muncipality, and therefore a constituent part of the Commonwealth and clothed with its sovereign power. The city cannot be estopped by the illegal, neglectful or dishonest acts of its former officials, and the city had the right to expect and to require that any contract which

they entered into with a contractor should be fulfilled and carried out in accordance with its plain terms.

For these reasons we have concluded that it is our duty to dispose of this case from the bench, and we will direct you to find a certificate in this action in favor of the defendant, the City of Philadelphia, for the sum of $8,868.89.

Verdict for the defendant with a certificate for $8,868.89 and judgment thereon. Plaintiff appealed.

*Error assigned,* among others, was the charge of the court.

*Theodore F. Jenkins,* for appellant.

*Edgar W. Lank,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellee.

PER CURIAM, May 4, 1914:

The undisputed facts in this case appear in the charge to the jury, in which the learned trial judge directed them to return a certificate in favor of the defendant. It was clearly entitled to that certificate, and the basis for the same was competent testimony, the admission of which is the subject of the first assignment of error: The second, third, fourth and fifth complain of the disallowance of certain offers of testimony. If all of it had been admitted, it would not have helped the appellant, which was bound by the plain, self-construing terms of its written contract with the city. The judgment on the verdict directed in its favor is affirmed.