# Kuhn, Appellant, *v.* Commonwealth.

*Contracts—Contract with Commonwealth for printing—Game commissioners — Superintendent of printing—Agency—Authority —Notice—Hunters' license tags—Public officers.*

1. Under a contract to do the state printing for a period of four years from July 1, 1921, the contractor cannot claim that he was entitled to print, for the year 1924, the hunters' license tags distributed by the game commissioners under the Acts of April 17, 1913, P. L. 85, and June 7, 1919, P. L. 433, where it appears that the tags had been printed prior to 1924, but for that

year the commissioners had substituted stamped metal tags made by another contractor.

2. In such case the contract entitled the printer to do whatever printing the Commonwealth in good faith saw fit to have done during the term of the contract, not all it might have done.

3. The printer cannot support his claim by proof of an oral agreement with the superintendent of printing and binding, outside the written contract.

4. The contractor was bound to take notice of the lack of authority of the superintendent, where it appears that the game commissioners never gave the superintendent any authority to decide how the tags should be printed, or that they should be printed at all.

5. The fact that the game commissioners had caused the tags to be printed for eight years prior to the making of the contract, did not obligate them to do so in the future.

Argued November 30, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 29, May T., 1927, by plaintiff, from judgment of C. P. Dauphin Co., No. 113, Commonwealth Docket, 1925, for Commonwealth, on an appeal from settlement of account, in case of J. L. L. Kuhn v. Commonwealth. Affirmed.

Appeal under Act of March 30, 1811, 5 Sm. L. 228, from settlement of account by auditor general and state treasurer. Before HARGEST, P. J., and WICKERSHAM, J., without a jury.

Judgment for Commonwealth. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*J. W. Swartz,* for appellant.—The Commonwealth had no right, during the term of the contract in question, to discontinue the printing of the hunters' license tags required by the Commonwealth for the year 1924, and the Commonwealth in having said tags printed or stamped

on aluminum plates, outside the contract, without the consent of the contractor, committed a breach of the contract and the plaintiff is entitled to claim prospective profits by reason thereof: Fisher v. Ronemus, 267 Pa. 325.

*Roscoe R. Koch,* Deputy Attorney General, with him *Thomas J. Baldrige,* Attorney General, for appellee, cited: Hague v. Phila., 48 Pa. 527; Trevorton Water Supply Co. v. Twp., 259 Pa. 31; Moore v. Luzerne Co., 262 Pa. 216; York Gazette Co. v. York Co., 25 Pa. Superior Ct. 517; Utah Power & Light Co. v. U. S., 243 U. S. 389, 61 L. Ed. 791; Bartholomew v. Lehigh Co., 148 Pa. 82; Consolidated Dressed Beef Co. v. Phila., 245 Pa. 268.

OPINION BY MR. JUSTICE WALLING, January 3, 1928:

Plaintiff brought this case into the court of common pleas on appeal from the settlement of the auditor general and state treasurer, rejecting his claim for damages for an alleged breach of contract. Jury trial being waived, the case came before the court on the pleadings, an agreed statement of facts and testimony. The trial court made findings of the facts, drew legal conclusions and in due course entered final judgment for the defendant; plaintiff has appealed.

A brief consideration is sufficient to vindicate the judgment. The superintendent of printing and binding, as was his duty, advertised for sealed proposals for the state printing for a period commencing July 1, 1921. The bids were opened February 22d, of that year, and the contract was awarded to plaintiff as the lowest bidder. His bid on the entire state printing, for a term of four years, being seventy-two per cent below the maximum schedule rates named in the statute. The contract consisted of plaintiff's written proposal in the form of an agreement, duly certified by the superintendent of printing and binding and having thereon the written

approval of the Governor, the auditor general and the state treasurer. The contract was to do all the printing, binding and other work generally executed in a printing and binding establishment, for the Commonwealth of Pennsylvania for the four years, no mention being made of any special items. The validity of the contract is not challenged; but the question here is, did it give plaintiff the right to print the hunters' license tags for the year 1924? These annual tags were first required by the Act of April 17, 1913, P. L. 85, amended by the Act of June 7, 1919, P. L. 433, and the duty of their preparation and distribution was committed to the board of game commissioners. Prior to the year 1924 the tags had been printed on waterproof material known as fabrikoid, supplied by the Commonwealth. That year the board decided to discontinue printing the tags and have them stamped and enameled on aluminum plates, which was done under a contract, by the State Industrial Reformatory, at Huntingdon. Admittedly this manner of preparing the tags was not printing within the terms of plaintiff's contract, and there is nothing in the Act of 1913, or any amendment thereof, requiring the printing of hunters' license tags. Neither is there such a requirement in any statute relating to state printing. Plaintiff's contract entitled him to do whatever printing the state had done during the term, but did not obligate the latter to have any particular work done for his benefit. As pertinently stated by the trial court, the legislature was not required to enact statutes that plaintiff might be profited by printing them. Had the legislature, during the session of 1921, or that of 1923, repealed the statutes providing for hunters' license tags, plaintiff would have had no legal ground of complaint. The general rule is that one merely entitled to the output of a mine or factory cannot compel its operation for his benefit. Had the Commonwealth let the contract for printing the hunters' license tags for 1924 to another, plaintiff might have just

cause of complaint; but, as they were not printed for that year, he has none. It is not unlike the case of Mc-Keever v. Iron Co., 138 Pa. 184, where it is held that a contract to purchase the coal required in a mill was not breached by vendee substituting gas for fuel during the contract period, thereby reducing the amount of coal consumed. The principle is illustrated by the rule that a contract for a season's output embraces only the amount which is, and not which might be, produced. See Kenan v. Yorkville Cotton Oil Co. (S. C.), 1 A. L. R. 1387, and note 1392. A grant of the right to take water from a canal does not impose upon the grantor the duty of maintaining water therein after its use as a canal has been abandoned: Com. v. P. R. R. Co., 51 Pa. 351. In the instant case the contract entitled plaintiff to do whatever printing the Commonwealth in good faith saw fit to have done during the term; not all it might have had done.

Plaintiff contends, however, that he was entitled to print the hunters' license tags by virtue of an oral agreement with the superintendent of printing and binding, outside the written contract. Waiving the question of the sufficiency of the evidence to support a finding of the existence of such oral agreement, the contention is unsound for several reasons. (a) There being no claim of fraud, accident or mistake, the rights of the parties were governed by the written contract. See Gianni v. Russell & Co., Inc., 281 Pa. 320. (b) The only contract approved by the Governor, the auditor general and state treasurer was the one in writing, and without their approval any contract relating to state printing was invalid. See section 12, article III, of the state Constitution, and a like provision in the statutes relating to state printing. See Act of February 7, 1905, P. L. 3; also amendments thereto: Acts of May 11, 1911, P. L. 210, and of February 16, 1921, P. L. 5, etc. (c) In letting contracts for public work, all bidders must have a common standard and no private arrangements can be rec-

ognized: Page v. King et al., 285 Pa. 153; Harris v. Phila. et al., 283 Pa. 496; Flinn v. Phila. et al., 258 Pa. 355; Edmundson v. Pittsburgh School District, 248 Pa. 559. Moreover, the board of game commissioners never gave the superintendent of printing and binding any authority to decide how they should be prepared, or that they should be printed, and of this lack of authority plaintiff was bound to take notice: Union Paving Co. v. Phila., 263 Pa. 577; Moore v. Luzerne Co., 262 Pa. 216; Hague v. City of Phila., 48 Pa. 527; 22 R. C. L. p. 459; Sutton et al. v. United States, 256 U. S. 575; Whiteside et al. v. United States, 93 U. S. 247. A municipality is bound only by the authorized acts of its agents: Shields v. Hitchman, 251 Pa. 455; Consolidated Beef Co. v. Phila., 245 Pa. 268; Bartholomew v. Lehigh Co., 148 Pa. 82; York Gazette Co. v. York Co., 25 Pa. Superior Ct. 517. A municipality is bound by the terms of a construction contract which it has executed and not by the unauthorized representations or declarations of its officers, which would change the written stipulations of the agreement: Ruch v. York, 233 Pa. 36.

That the board of game commissioners had caused the tags to be printed for the eight years prior to the making of the contract did not obligate it to do so in the future, as the method of preparing the tags was a matter for its discretion. The case lacks the elements necessary to an estoppel; hence, it is unnecessary to determine when, if ever, the rule thereof can be invoked against the Commonwealth.

There is no merit in any of the numerous assignments of error and the judgment is affirmed.