CENTRAL BOCA CHICA, INC., Plaintiff and Appellee, *v.* TREAS-
URER OF PUERTO RICO, Defendant and Appellant. CENTRAL
BOCA CHICA, INC., Plaintiff and Appellant, *v.* TREASURER
OF PUERTO RICO, Defendant and Appellee.

Nos. 7786 and 7917. Argued January 13, 1939.—Decided March 8, 1939.

V. *Zayas Pizarro* for plaintiff. B. *Fernández García, Attorney General,* and V. *Palés Matos,* 'Assistant Attorney General,* for defendant.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The Central Boca Chica, Inc., a domestic corporation engaged in the cultivation of sugar cane and the manufacture of sugar, wishing to insure its laborers in keeping with Act No. 85 of May 14, 1928 (Laws of 1928, page 630), requested the Industrial Commission, on October 25, 1932, to issue the corresponding policy. It entered into an agreement with the insurance appraiser José G. Salgado, of the Bureau of Workmen's Compensation, that the policy would be retroactive to October 14th and that the premium would be paid in monthly payments beginning on October 31, 1932. Salgado issued the policy requested, under number 8294, and delivered it to the insured. On the date agreed upon the plaintiff sent to the Industrial Commission the first payment of the premium amounting to $990. The Treasurer of Puerto Rico refused to receive the payment and alleged that the premium should be paid for by semesters in advance. The plaintiff did not pay the premium in the manner indicated by the Treasurer, although it alleges that it was always willing to pay the premium in monthly payments. This was the state of affairs on April 31, 1933, when the defendant Treasurer demanded that the plaintiff pay the entire amount of the premium, with interest and surcharges. The Treasurer alleged that as plaintiff had not paid the premiums by semesters in advance, its status was that of an uninsured employer and therefore not only demanded payment of the entire premium amounting to $6,016.80, including surcharges, but also stated that as an uninsured employer it should pay all the compensations awarded to its laborers between October 14, 1932, and April 13, 1933. Property of the plaintiff was attached to insure

said payment, and on January 29, 1934, it paid under protest the amount of $6,016.80 to cover the premium and surcharges. Later it also paid under protest the balance allowed for accidents, which amounted to $10,086.00.

Plaintiff alleged that by paying the $6,016.80 on January 29, 1934, it became an insured employer and that therefore the collection of the aforementioned $10,086.50 was illegal, and that if it was not considered an insured employer, the amount of $6,016.80 charged for the insurance premium should be returned to it. It filed this suit in the District Court of Ponce on October 2, 1934, and amended its complaint on September 11, 1935, and prayed for relief as above.

After the "second amended supplementary complaint" was filed, the Treasurer of Puerto Rico delivered to plaintiff through its Collector of Internal Revenue of Ponce, an additional liquidation for the sum of $708.79, which was a liquidation of the claims of accidents during work of various laborers of plaintiff for the period of time between October 14, 1932, and April 13, 1933, which sum includes $701.79 as liquidation expenses and $7 as surcharges and expenses of the attachment. The foregoing liquidation for $708.79 was paid under protest on September 11, 1935, and was the reason for the filing of the "supplementary amended bill of complaint." (Record, page 12.)

Including this last payment, the amount claimed by plaintiff for payments made during the time which it alleged it was an insured employer, amounts to $10,795.29.

The defendant filed demurrers which were dismissed and finally an answer to the "amended supplementary bill of complaint" and also an answer to the "second amended supplementary bill of complaint." Defendant accepts that plaintiff made the payments as alleged and that the former refused to receive the premium corresponding to policy No. 8294 in monthly payments; he further admits that on April 13, 1933, he refused to receive from plaintiff the entire amount of the premium with interest and surcharges; that the attachments

alleged by plaintiff were made, and finally, in its answer to the "second amended supplementary bill of complaint", defendant states his position as follows:

"That on October 25, 1932, plaintiff requested and obtained from the insurance appraiser of the Industrial Commission, José G. Salgado, a policy serial No. 8294, to cover the insurance of its workmen during the fiscal year 1932–33. That an agreement was entered into with said employer that the premium would be paid in monthly payments beginning on October 31, 1932; that the insurance appraiser José G. Salgado was not authorized to accept conditions nor enter into agreements of this nature with the pliantiff and that therefore the defendant refused to accept said policy and returned it to plaintiff on October 27, 1932; that in a letter dated November 5, 1932, the chief of the Workmen's Compensation Bureau by order of the Treasurer of Puerto Rico returned to plaintiff check No. 7576 issued by the latter in favor of the Treasurer of Puerto Rico for the sum of $990, the amount of the first instalment of the premium corresponding to said policy No. 8294; that the agreement to pay the premium of said policy in monthly payments was entered into by said insurance appraiser but that no agreement was ever made with the Industrial Commission or with the Treasurer of Puerto Rico, and that during all the time mentioned, plaintiff's status was that of an uninsured employer; that this status continued until April 13, 1933, when the Central Bocachica came into the possession of the Succession Serrallés, who by its new administrator requested an insurance in the State Fund until June 30th of said year, which insurance was issued after payment of the premium." (Record, pp. 29–30.)

The case went to trial and on April 26, 1938, the District Court of Ponce rendered the following judgment:

"The Court, based on the reasoning of its opinion rendered today and which forms a part of the record, hereby renders judgment in part for plaintiff, and therefore orders defendant Rafael Sancho Bonet, as Treasurer of Puerto Rico, to return to the present plaintiff, Wirshing & Co. S. en C., who is subrogated in all the rights and actions of the former plaintiff Central Bocachica Inc., the sum of six thousand sixteen dollars and seventy-nine cents ($6,016.79), which was paid under protest by the Central Bocachica Inc. on January 29, 1934, as appears from receipt No. 334 signed by the

Collector of Internal Revenue of Ponce, plus interest on said sum at the rate of 6% per annum from the date of the filing of the original complaint in this Court, that is, from October 2, 1934. No special award of costs is made." (Record, page 46.)

Both parties appealed from the foregoing judgment. Plaintiff's assignment of errors is as follows:

"1. The District Court erred as to the facts and the law in holding that the Central Bocachica Inc. was not an insured employer from October 14, 1932, to April 13, 1933, and that therefore the Central Bocachica had to pay the compensations and liquidation expenses for the accidents occurred to plaintiff's workmen during said period, that is, from October 14, 1932 to April 13, 1933.

"2. The District Court of Ponce erred in not holding that policy No. 8294 issued in the name of Central Bocachica Inc. by José G. Salgado representing the State Insurance Fund was duly issued and that therefore immediately after it was issued said Central Bocachica Inc. became an employer insured with the State Fund during said period of time from October 14, 1932, to April 13, 1933.

"3. The District Court of Ponce erred in not holding that even in the case that policy No. 8294 issued in the name of Central Bocachica Inc. was not issued formally by an agent duly authorized to do so, nevertheless when the defendant, the Treasurer of Puerto Rico, demanded the payment of the premium of the insurance with the State Fund and when the same was paid by plaintiff on January 29, 1934, when the term covered by said insurance had already expired, but before payment of the compensations and liquidation expenses of the accidents occurred during said period of time had been demanded, the policy was unconditionally ratified and confirmed by these acts and likewise unconditionally the effects of the policy became retroactive to the date on which the same was issued and therefore plaintiff was in no manner bound to pay the compensations and liquidation expenses which were collected and paid under protest to the Treasurer of Puerto Rico under the theory that said Central Bocachica Inc. was an uninsured employer.

"4. The District Court of Ponce incurred in serious error in rendering a judgment against the law and the facts of this case."

Defendant alleged a single error, to wit:

"1. The District Court of Ponce erred in deciding that: 'An uninsured employer is not bound to pay to the Treasurer of Puerto

Rico, in addition to compensations for accidents occurred while he was not insured, the premium of an insurance policy which covers the same period.' "

As the errors assigned by both parties are so interrelated, we will consider both appeals jointly, starting with plaintiff's assignment of errors.

 Did the District Court err in holding that plaintiff was an uninsured employer from October 14, 1932, to April 13, 1933?

Plaintiff devotes most of his brief to show that it was an insured employer during said time.

The law applicable to this case is Act No. 85 of May 14, 1928 (Laws of 1928, p. 630), Section 40 of which states in part as follows:

· "Insurance of each employer by the State *shall be in force immediately after his pay-roll or duplicate statement has been filed in the office of the Commission, together with the amount of premium* corresponding to the percentage of the wages declared in said statement according to the rates fixed by the Treasurer; . . ." (P. 680.)

Act No. 85 requires the existence of two elements in order that the insurance by the state be effective: (*a*) That the payroll be filed in duplicate in the offices of the Commission stating the number of workmen employed by the employer, the kind of occupation of said workmen and the amount of day wages paid to said laborers during the previous fiscal year; and (*b*) *payment of the premium at the time the said pay-roll in duplicate is filed.*

In keeping with the above principle, the legislator stated it in a clear manner in Section 27 of Act No. 45 of 1935 (Laws of 1935, page 250, 310), which in its pertinent part states as follows:

· "The insurance of each employer by the State shall be in force immediately after this payroll or duplicate statement has been filed in the office of the Manager of the State Fund, *together with the amount of the premiums corresponding to the percentage of the wages declared in said statement, in accordance with the rates fixed*

*by the Manager; Provided, That any accident that occurs before payment of said premiums is made shall be considered as a case of an uninsured employer, unless the employer pays within the term fixed by the Manager of the State Fund, in which case the insurance shall begin to run from the date on which the employer filed the payroll or statement in the office of the Manager.*

"On receipt of payment from an employer, the Manager of the State Fund shall forward to said employer the receipt for such payment, which receipt shall be *prima facie* evidence of said payment of the premium and of said employer's compliance with the provisions of this Act. *Until such payment is made by the employer, he shall not be entitled to the immunities provided by this Act* in regard to such injuries, diseases, or deaths as may be suffered by the workmen or employees of such employer during the period covered by the payment of such premiums, and the workmen or employees of such employer shall not be entitled to the benefits granted by this Act when they suffer such injury, disease, or death, *but they shall have the right to file such claims against the employer in accordance with the procedure established for cases of uninsured employers.*" (Italics supplied.)

And in Section 25 of said Act of 1935, the legislator again states:

"Should an employer fail to pay the total amount of the premiums legally levied on him within the time fixed by the Manager, the latter may grant an extension of thirty (30) days so that the employer may make the payment, *which payment shall be an indispensable requirement so that the Manager may make any insurance policy effective.* (Italics supplied.)

Plaintiff tries to show that payment of the premium at the time of filing the "pay-roll in duplicate" is not a prerequisite to the existence of the policy and argues:

"If it had been the intention of the Legislature to deprive those who had not paid the premium in advance of their right to insurance in the State Fund, why was it not clearly stated as was done in the repealing Act No. 40 of 1935? The legislative intent is inferred from this fact and from the additional fact that an adequate remedy is given for the collection of the premium which payment the appellant herein made to the Treasurer of Puerto Rico as soon as said

official attached the property of said appellant according to law as appears from the receipts copied on pages 26 and 27 of the transcript of evidence in this case." (Brief, p. 31.)

This argument cannot withstand the slightest analysis. The rules of legal interpretation are not arbitrary or capricious. They are all based on principles of logic. What basis do we have to infer that because a later law is more explicit in setting forth a provision than a former law repealed by it, the legislative intent is not the same in both? It may be that the possibility of being erroneously interpreted or in order to dissipate any doubts which may have arisen from the language used, and not that its intent was different from that expressed before, might have been the reason to make the new act more explicit. In this regard it is said in the article "Statutes and Statutory Interpretation" by Charles C. Moore, which appears in 1 Fed. Stat. Ann. 8, 42:

"But the facility with which the legislature might have expressed itself more appropriately or more directly will not authorize a court to disregard the natural sense of the words actually used."

Section 40 of Act No. 85 of 1928 above copied is perfectly clear in regard to the necessity of accompanying the payment of the premium to the "duplicate statement" in order that the insurance by the State Fund be in effect.

Section 40 of Act No. 85 of 1928 copied above is perfectly clear in regard to the necessity of accompanying the payment of the premium to the "duplicate statement" in order that the insurance by the State be in force.

▇ Plaintiff did not fulfill this requirement. He gave the insurance appraiser the statement required by the Act and when the policy was issued he did not send the amount of the corresponding premium but abided by the agreement entered into with said official. Was the insurance appraiser authorized to vary the manner of payment of the policy? The Act does not so authorize him and if the Act expressly provides that "the amount of the premium" should be attached

to the "duplicate statement" in order that the insurance be in force, neither the insurance appraiser nor the Treasurer himself could ignore the express provision of the Act and accept partial payments. Public officials bind the State only when they act within the powers conferred on them by law. *Jeems Bayou Fishing, etc. Club* v. *U.S.,* 260 U.S. 561, 67 L. ed. 402; *Citizens' Bank* v. *Seminole County Board of Education,* 170 Ga. 654, 153 S.E. 768; *Kuhn* v. *Commonwealth,* 291 Pa. 497, 140 A. 527.

In the case of *Kuhn* v. *Commonwealth,* 140 A. 527, 529, the Supreme Court of Pennsylvania, holding that the acts of employees or officials do not bind the State unless said acts are duly authorized by law, said as follows:

"Moreover, the board of game commissioners never gave the superintendent of printing and binding any authority to decide how they should be prepared, or that they should be printed, and of this lack of authority plaintiff was bound to take notice. *Union Paving Co.* v. *Phila.,* 263 Pa. 577, 107 A. 370; *Moore* v. *Luzerne County,* 262 Pa. 216, 105 A. 94; *Hague* v. *City of Philadelphia,* 48 Pa. 527, 22 R.C.L. page 459; *Sutton et al.* v. *United States,* 256 U. S. 575, 41 S. Ct. 563, 65 L. Ed. 1099, 14 A.L.R. 403; *Whiteside et al.* v. *United States,* 93 U. S. 247, 12 S. Ct. 10, 23 L. Ed. 882. A municipality is bound only by the authorized acts of its agents. *Shields* v. *Hitchman,* 251 Pa. 455, 96 A. 1039; *Consolidated Beef Co.* v. *Phila.,* 245 Pa. 268, 91 A. 367; *Bartholomew* v. *Lehigh County,* 148 Pa. 82, 23 A. 1122; *York Gazette Co.* v. *York County,* 25 Pa. Super. Ct. 517."

Referring to the defense of estoppel pleaded by one of the defendants, the Supreme Court of the United States has said:

"Of this it is enough to say that the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit. *Lee* v. *Munroe,* 7 Cranch, 366; *Filor* v. *United States,* 9 Wall. 45, 49; *Hart* v. *United States,* 95 U. S. 316; *Pine River Logging Co.* v. *United States,* 186 U. S. 279, 291." (*Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 409.)

▆ Plaintiff, trying to show that the previous payment of the premium is not a condition precedent to the existence

of the insurance by the State, invokes that part of Section 38 of said Act No. 85 of 1928 which reads as follows:

"Should an employer fail to pay the total amount legally assessed against him within the time fixed by the Treasurer, he shall be allowed thirty days' grace, and if on the expiration of this term he has still failed to pay, the Treasurer of Puerto Rico, without excuse or delay, shall levy an attachment on any property of the employer and shall proceed to collect the assessment due as in the case of collection of property taxes; *Provided,* That the Treasurer of Puerto Rico may collect surcharges for every month or fraction thereof during which such assessments remain unpaid, at the rate of one per cent a month; *And, provided, further,* That the Treasurer of Puerto Rico is hereby empowered to utilize the services of the officers and employees of the Commission to aid him in collecting the assessments and in prosecuting such attachments as may be proper."

The above provision is not in conflict with Section 40, which determines when the insurance is effective. All that that part of Section 38 above does is to provide the Treasurer with an adequate remedy for the collection of the premiums; but this does not mean that the insurance is effective by the mere fact of filing the "duplicate statement", especially when Section 40 requires both things: the filing of the "duplicate statement" and the payment of the premium.

We have already seen that the policy had no legal effect whatsoever when it was issued, since the official who issued it, although authorized to do so, could not agree on a manner of payment different from that set forth in the Act. The partial payments offered by plaintiff were not accepted. Nevertheless plaintiff alleges that even if the policy were not valid in its inception, it was ratified by the Treasurer when he later demanded and obtained the payment of the entire premium.

In order that a confirmation or ratification exist, it is necessary that the person meaning to confirm or ratify the contract state his desire expressly or impliedly. In reference

to the confirmation of contracts, Section 1263 of the Civil Code (1930 ed.) provides:

"The confirmation can be made either expressly or in an implied manner. It shall be understood that there is an implied confirmation when, being aware of the cause of the nullity, and such cause having ceased to exist, the person who may have a right to invoke it should execute an act which necessarily implies his wish to renounce such a right."

In his commentaries to Section 1311 of the Spanish Civil Code, which is the same as Section 1263 of our Code, Manresa says:

"*Express or implied ratification.—Multiplicity of defects.*—The ratification does not have to follow any rigorous formula nor even any special form; it can be as the law states, express or implied. The former is not defined by law, doubtless because it is perfectly clear in itself, and such express ratification should be considered to exist according to the meaning of said word and the provisions of other codes, when a reference is made to a contract already entered into, when mention is made of a defect in said contract, and the desire to ratify it is stated, or, what is the same, when a waiver of the right of action to claim the nullity of the contract as a result of said defect is expressed.

"Since a contract may be null for different reasons, it is possible that two or more of these defects concur to determine the nullity, for example: violence and mistake, and that only one of these defects be ratified, the first, in which case the other vice being unknown, the right of action derived therefrom will not expire, as in reality it exists independently of the ratified defect.

"In an implied ratification, as the reasons for the nullity are not expressed, it would seem logical to suppose that there is a full ratification provided all the defects are known to the party to whom the ratification is ascribed.

"Which these acts are, or what is the same, the manifestations of an implied ratification, cannot be determined *a priori*, nor does the law determine them, whose broadness does not allow to establish a steadfast rule, leaving to judicial interpretation in each case the determination of the intent to waive the defect. For these reasons and discussing separately two forms which may be common in implied ratification, one of them expressly mentioned by foreign laws

dealing with this subject, we accept of course the doctrine established by judgment of May 7, 1897, in regard to one of the most clear cases of implied ratification, which holds that a contract must be considered as ratified when the person who should ratify claims in court his rights under the contract; this doctrine, which refers to ratification, is applicable as well to confirmation in general provided the party ratifying knows of the vices of the contract.'' (Manresa, ''Comentarios al Código Civil'', vol. 8, 805–807.)

Did the Treasurer at any moment manifest his desire to ratify the contract entered into by the insurance appraiser? Plaintiff's exhibit D and his pleadings show the contrary. Said exhibit D, which is a letter written by the Treasurer J. W. Blanco addressed to plaintiff on May 16, 1933, appearing on page 139 of the transcript of the evidence, in its last two paragraphs reads as follows:

''According to the provisions of the Act, as same has been construed by the Attorney General of Puerto Rico, this office is bound to and will charge the premiums for the time during which you were not insured in any of the forms determined by law, and to that effect we will send, through the Collector of Internal Revenue of that city, a receipt for the amount of $5,622.23, which we hope you will pay as soon as possible so as to avoid surcharges.

''*I wish to remind you again that the payment of this amount, which constitutes your liability as an uninsured employer, does not exempt you from the payment of compensations during the period you were not duly insured according to the provisions of the Act.*''

See also the fourth paragraph of the second supplementary amended complaint (record, page 6).

The Treasurer could not, in a clearer form, have expressed his intention not to ratify or convalidate the policy with retroactive effect to the date on which it was issued by the insurance appraiser. Plaintiff so understood it, and in paying his premium, he did so under protest, thereby showing that he did not agree with the Treasurer's opinion that he was bound to pay the compensations as well as the premium.

From the above facts we arrive at the conclusion that the policy originally issued by the insurance appraiser had no

legal effect whatsoever and that the payment made by plaintiff on January 25, 1934, that is, almost a year after the period for which the policy was requested had elapsed, did not confirm or ratify said policy, for, as we have seen, the manifest will of the Treasurer when he received the payment was that plaintiff should in any case be considered as an uninsured employer for the period of the policy, which was since October 14, 1932, to April 13th of the following year.

In our opinion the lower court did not err in holding that plaintiff was not an insured employer between October 14, 1932, and April 13, 1933, and if he was an uninsured employer throughout that period, the compensations awarded to his workmen for accidents occurred during same should have been paid, as they were, by plaintiff as an uninsured employer. Therefore, the lower court committed none of the first three errors alleged by plaintiff-appellant.

The fourth alleged error need not be considered since if the first three errors were not committed, the judgment rendered by the District Court of Ponce is not contrary to the law and the facts of this case.

■ The only error assigned by defendant-appellant is to the effect that plaintiff should have paid not only the amount of the compensations awarded to its workmen during the period in question, but also the premium of the policy which was collected by defendant and which amounts to $6,016.80.

In denying plaintiff's motion requesting the dismissal of the appeal filed by defendant in this same case (*Central Boca-chica* v. *Tesorero*, 53 P.R.R. ____), we suggested that Section 36 of Act No. 85 of 1928, which we had under consideration in authorizing the Superintendent of Insurance to order the attachment of property of any employer who did not insure his workmen and in providing that the attachment would remain in force "*until the employer proves that he has complied with his obligation of insuring himself and until the liabilities contracted by him with his laborers during the period when he was not insured are liquidated or he files a*

*bond to insure the payment of same to the satisfaction of the Superintendent of Insurance"*, sustained defendant's contention to the effect that in the instant case not only did he have a right to collect the compensations awarded to the workmen but also the payment of the premium of the insurance. Nevertheless, construing said Section 36 together with the other provisions of the same Act, it is easily seen that the reason why the attachment is declared to be in force until the employer fulfills the above-mentioned obligations, is because according to said Act if an employer does not insure himself within the time stated in the Act, when doing so later he is considered an uninsured employer in regard to the accidents occurred before he insures himself and as an insured employer from the date of the insurance. But in this case, as we have seen, the employer was not an insured employer at any moment between October 14, 1932, and April 13, 1933, since the premium of the policy was not paid until January 29, 1934, that is to say, after said period had elapsed. Since plaintiff was not an insured employer during said time, the Treasurer could not force him to pay the premium of an insurance which never existed. In other words, defendant can not collect from plaintiff the compensations awarded to his workmen as an uninsured employer and also the amount of the premium of the insurance after the time during which he should have insured himself has expired. Plaintiff's liability as an uninsured employer is that provided for by law, that is, the payment of compensations awarded to his laborers with the corresponding surcharges and expenses plus the civil and penal fines provided for in Sections 31 and 32 in case they should be imposed. Nowhere does the act impose the obligation on the uninsured employer to pay the premium after the term during which he should have been insured has expired, as happens in this case.

For the foregoing reasons both appeals should be dismissed and the judgment appealed from affirmed.