Atlantic Refining Company Unemployment Compensation Case.
Department of Labor and Industry, Bureau of Employment Security, Appellant,
*v.* Unemployment Compensation Board of Review.

Argued March 9, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Morley W. Baker,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Department of Labor and Industry, Bureau of Employment Security, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*H. Barton Off,* with him *Joel L. Carr* and *Roy W. Johns,* for intervening appellee.

OPINION BY MONTGOMERY, J., April 14, 1964:

This is an appeal by the Pennsylvania Department of Labor and Industry from an order of the Unemployment Compensation Board allowing relief to the Atlantic Refining Company (Atlantic), intervening appellee, from charges to its unemployment compensation reserve account for benefits granted to 355 of its employés who had been retired on pension[1] immediately following their 65th birthdays in accordance with a company policy. The basis for the allowance is §302(f) of the Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897, 43 P.S. §751 et seq., which provides that ". . . such account shall be charged with all compensation, by even dollars, paid to each individual who received from such employer wage credits constituting the base of such compensation, in the proportion that such wage credits with such employer bears to the total wage credits received by such individual from all employers: Provided, That if the department finds that such individual was separated from his most recent work for such employer due

---

[1] The pension system was a jointly-contributory retirement system known as the "Employees' Retirement System of the Atlantic Refining Company" and provided for a retirement allowance payable for life. All of the claimants were members.

to being discharged for willful misconduct connected with such work, or due to his leaving such work without good cause attributable to his employment, . . . thereafter no compensation paid to such individual with respect to any week of unemployment occurring subsequent to such separation . . . shall be charged to such employer's account under the provisions of this subsection (f) ; provided, such employer has filed a notice with the department in accordance with its rules and regulations and within the time limits prescribed therein." As amended by Act of August 24, 1953, P. L. 1397, §3; Act of September 3, 1955, P. L. 556, §1, 43 P.S. §782.

The aforesaid employes were granted benefits on the theory that they had been involuntarily separated from their employment, which theory is supported by the case of *Gianfelice Unemployment Compensation Case*, 186 Pa. Superior Ct. 186, 142 A. 2d 739 (1958) ; reversed 396 Pa. 545, 153 A. 2d 906 (1959). No appeal was taken by the employer in those cases. However, it filed timely notice of its claim for relief from charges under §302(f) aforesaid.[2]

In the Reynolds case his claim for benefits was filed on August 25, 1959; and on September 10, 1959, Atlantic filed its request for relief from charges. On October 7, 1959, the bureau granted benefits to Reynolds; but on November 6, 1959, it denied Atlantic relief from charges for two reasons: (a) "Claimant cannot be considered to have left his most recent work for you 'without good cause attributable to that employment'," and (b) "Claimant's separation from his most recent work for you cannot be considered a 'discharge' for wilful misconduct connected with that employ-

---

[2] Although only the case of W. F. Reynolds was heard by the unemployment compensation authorities and is the only one before us in this appeal, the decision in that case will be applied in the other 354 cases, under a stipulation dated July 21, 1961.

ment. On appeal by Atlantic from the refusal of its claim for relief, the referee reversed the bureau and allowed relief, which action was affirmed by the board." The department has now brought the matter before us. Its appeal is based principally on the argument that since Reynolds has been separated from his employment under the provisions of a compulsory retirement contract, such separation is for good cause attributable to his employment within the meaning of §302(f) of the Pennsylvania Unemployment Compensation Law. This interpretation of the law is different from that originally adopted by the department at the time that it issued to Atlantic and to other employers the following notice on or about January 21, 1952:

"Important Notice to Employers With Pension Programs

"A recent amendment to the Unemployment Compensation Law has repealed the provision for deduction of pension payments from unemployment compensation payments.

"The Department of Labor and Industry has ruled that an employer may obtain relief from charges for benefits paid to an employe separated from his employ to receive a pension pursuant to an agreement of employment. In such cases, the cause of separation is not 'attributable to his employment.' (Section 302-(f))."

There appears to be no dispute that Reynolds' separation was involuntary. The major dispute centers on the question of whether it was with good cause attributable to his employment. A review of the legislative history of §302(f) may help to resolve this dispute. The Act of May 26, 1949, P. L. 1854, §4, was the first to establish Employer's Reserve Accounts and was the first to contain §302(f); however, it was not until the amendment to §302(f) by the Act of September 29, 1951, P. L. 1580, §7, that the department had

any right to grant relief to employers. That amendment provided that relief from charges may be given to the employer when the department found that the employe receiving benefits *voluntarily left his work without good cause attributable to his employment.* The Act of August 24, 1953, P. L. 1397, §3, amended §302(f) by deleting the word voluntary, making it applicable to cases of employes *leaving their work without good cause attributable to their employment,* thus removing the distinction between voluntary and involuntary separation but retaining the requirement that the separation must be without good cause attributable to their employment. By another amendment of September 3, 1955, P. L. 556, §1, a further extension of the employer's right to relief from charges was made by excepting from the causes attributable to employment, those causes arising from disasters by reason of which the Governor declares a state of emergency.[3]

The *Gianfelice* case, supra, is authority for the principle that the factual matrix is determinative of the cause of the separation in these cases. Both the referee and the board found that Reynolds ". . . was retired in accordance with the company policy because he obtained the mandatory retirement age of 65 years. . . ." This finding has not been questioned and is supported by the record. Although the board reversed its original decision which denied relief and by its later order allowed such relief, it made no change in the above finding of fact. The original decision of the board was based on the conclusion that the above factual situation was tantamount to dismissal, whereas the later decision was based on estoppel because of the notice issued by the department under date of January 21, 1952 (aforementioned). We are entirely in agree-

---

[3] We are advised that this provision has not been put into operation by the department because it failed to qualify for approval under federal regulations.

ment with the board's original conclusion, that mandatory retirement under a company policy is tantamount to discharge from employment. That is the holding of the *Gianfelice* case, supra. We quote from that opinion, page 556: "Since Gianfelice's unemployment arose not because he had voluntarily quit in fact; since the labor-management agreement cannot be referred to in order to supply a constructive 'voluntary quit'; and since receipt of a pension would not disqualify him, we hold that Gianfelice is entitled to receive unemployment compensation."

Atlantic argues strenuously that Reynolds' separation as a pensioner was for reasons attributable to his advanced age and not to his employment. This argument is based on facts which are contrary to those found by the board and, further, is contrary to the ruling in the *Gianfelice* case. There is nothing in the record that indicates that Reynolds was unable to continue working or that he did not desire to continue. The record is clear that he was dismissed by the mandatory policy of his employer. It was therefore for a cause attributable to his employment and employer. Furthermore, his having been a member of the retirement system would be of no significance since a statutorily expressed public policy cannot be modified by private agreements. *Gianfelice Unemployment Compensation Case*, supra. Either Reynolds voluntarily quit in fact to take his pension or he was dismissed involuntarily. The board found the latter to be the factual matrix.

We conclude that Reynolds' separation from Atlantic was with good cause attributable to his employment.

As noted previously herein, the basis of the board's final decision granting relief from charges was, as stated by the board in its decision in April 15, 1963, "The record indicates that this ruling of the Bureau

issued in 1952 had not been rescinded, changed or modified, and this employer notified to that effect, prior to the time that the request for relief from charges was filed on September 8, 1959. Consequently, it is our opinion that *it would be inequitable and improper* to apply a subsequent reversal of the Bureau's prior ruling to the within appeal." (Emphasis supplied)

Although the board failed to mention what principle of equity it was invoking to support its conclusion, the parties have confined the issue to whether the Commonwealth is estopped from denying a grant of relief from charges because of its unrescinded 1952 "Important Notice to Employers". The parties differ on what principle of estoppel is applicable. The department uses the word equitable estoppel and Atlantic refers to promissory estoppel. The distinction between the two concepts has been followed in Pennsylvania. *Fried v. Fisher,* 328 Pa. 497, 196 A. 39 (1938).

As our Supreme Court stated in *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196, 27 A. 2d 20, 23 (1942), "Equitable 'estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In this situation, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements': 31 C.J.S., sec. 59, p. 237; Howe v. Mimm, 105 Pa. Superior Ct. 474, 161 A. 603, 605." We agree with the department that the principle of equitable estoppel is inapplicable here because, if there was any misrepresentation by the department,

it was a misrepresentation not of fact but of law, on which the appellee could not place reliance. *Commonwealth v. Taylor's Exr.*, 297 Pa. 335, 147 A. 71 (1929).

Atlantic, however, relies on promissory estoppel and refers to *Fried v. Fisher,* supra, which incorporates into Pennsylvania law that principle as recited in Restatement, Contracts §90: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

We seriously question whether the "Important Notice to Employers" aforesaid is such a promise that could give rise to a promissory estoppel or whether it is merely a policy announcement of the department; but we do not decide that question because on other grounds we find no estoppel, whether promissory or equitable, present in this controversy. "Estoppel occurs only where the act alleged to effect it has caused harm to the person asserting it because of action taken by him in reliance upon such act." *Edelman v. Boardman,* 332 Pa. 85, 96, 2 A. 2d 393, 398 (1938). We fail to find any harm resulting to Atlantic because of the alleged promise of the department. The only harm alleged by Atlantic in its brief is that (1) "charges will be added to its Experience Rating which the Department and the Bureau had promised would not be added"; (2) the clerical and overhead expenses involved in processing the 355 notices for the instant claimants, and (3) the expenses of counsel incurred in prosecuting these appeals. These contentions are without merit. In particular, in its first claim of harm above, Atlantic fails to offer any authority or reason in support of the theory that a taxpayer has standing to claim harm from paying a tax lawfully imposed on him. Atlantic has advanced no other contentions or assertions of prejudice.

Since we find that this case lacks the elements of estoppel, it is unnecessary to consider and determine the additional question, argued by counsel on this appeal, which is when, if ever, the principles of estoppel can be invoked against the Commonwealth. *Kuhn v. Commonwealth,* 291 Pa. 497, 140 A. 527 (1928).

Decision reversed.