## STROHECKER *v.* THE FARMERS' BANK.

A contract reduced to writing by a party, and the execution thereof witnessed by his agent, is binding on the other party; no fraud or mistake being pretended, although its legal effect may have been misapprehended.

A guarantee, in an assignment on the back of a bond, in these words :—" And in case the same cannot be recovered of the within named W. S., then I promise and agree to pay the amount thereof, together with all charges thereupon accruing unto the Farmers' Bank of Reading, or their assigns,"—is a covenant that the obligor is able to pay, and that the bank, by using due diligence, shall receive the money.

ERROR to the Common Pleas of Berks county.

*June* 15.   In the court below, the Farmers' Bank of Reading brought an action of covenant against John Strohecker's administrator on the following assignment by John Strohecker, on a bond given by William Sharman to Daniel Strohecker :

" For a valuable consideration to me in hand paid, by the Farmers' Bank of Reading, (and by virtue of a letter of attorney from Daniel Strohecker and Leah Strohecker, his wife, to me, dated the thirty-first day of August, A. D. 1820, and duly recorded in the office for recording of deeds, &c., at Reading, Berks county, in Book A, vol. 31, page 415,) I do assign and set over the within obligation, and all moneys due and to become due thereon, unto the Farmers' Bank of Reading aforesaid, and their assigns, and in case the same cannot be recovered of the within named William Sharman, then I do promise and agree to pay the amount thereof, together with all charges thereupon accruing, unto the Farmers' Bank of Reading aforesaid, or their assigns.   Witness *my* hand and seal, September 14th, A. D. 1820.

" JOHN STROHECKER. [L. S.]
" Sealed and delivered in the presence of us,
" THOMAS CHADWICK,
" JOHN S. HIESTER."

John Garber died intestate prior to August, 1819, seised in fee of certain real estate.   Proceedings in partition were had in the Orphans' Court, and the same was appraised, after being divided into several purparts, one of which was accepted, and taken by William Sharman, in right of his wife Elizabeth, one of the daughters of the intestate, who gave a bond to Daniel Strohecker, intermarried with Leah, another daughter of the intestate, for her share of the valuation money.   The bond recited the proceedings in partition in the Orphans' Court, and upon its face disclosed that it was

given for Leah Strohecker's share of the valuation money, which was also secured by a recognisance given by Sharman to the Commonwealth of Pennsylvania, for the use of the heirs of John Garber, deceased.

Daniel Strohecker, and Leah, his wife executed·and delivered to John Strohecker the following power of attorney:

"Know all men by these presents, That Daniel Strohecker, of Chilisquaque township, Northumberland county, yeoman, and Leah his wife, have authorized and empowered, and by these presents do authorize and empower John Strohecker, of the borough of Reading, Berks county, for them and *in their name*, to assign, transfer, and set over, to the Farmers' Bank of Reading, a certain bond, dated the 6th day of August, A. D. 1819, of nineteen hundred and three dollars, twenty-four cents, or thereabout, payable in one year thereafter, with interest, from William Sharman, to said Daniel Strohecker, both intermarried with the daughters and heirs of John Garber, deceased, in satisfaction of part or in the whole (as the case may be) of a note due said Farmers' Bank, by the said John Strohecker, and further to do, execute, perform and finish, all and singular the acts, matters and things, which shall be expedient and necessary, touching and concerning the premises, as fully and effectually to all intents and purposes whatsoever, as they, the said Daniel Strohecker and Leah his wife, or either of them, might or could do in and about the same being personally present; and whatsoever he, the said John Strohecker, shall lawfully do, or cause to be done in and about the premises, by virtue of these presents, they do hereby ratify, allow, and confirm.    In witness whereof, the said parties to these presents have hereunto set their hands and seals, the 31st day of August, A. D. 1820.

"DANIEL STROHECKER, [L. S.]
"LEAH STROHECKER.    [L. S.]

Sealed and delivered in the presence of
"WILLIAM NESBIT,
"NANCY NESBIT."

John Strohecker then executed the assignment on the bond, and delivered it to the bank.    The assignment was drawn by the president of the bank, and the cashier was one of the subscribing witnesses.    Suit was brought on the bond in the name of Daniel Strohecker for the use of the bank, judgment recovered against Sharman, and the amount raised by a sale of his real estate, and paid into court.    Upon an application by the bank to take the money

out of court, at the instance of Leah Strohecker, who had survived her husband, the court directed an issue to try the right of the bank to the money in court. A final decision was made against the bank, in consequence of the assignment being defective, and in favour of Leah Strohecker, and she took the money out of court.

The defendant requested the court to charge the jury: "That under the evidence in this cause, the defendant is not bound to pay the claim of plaintiffs in the present suit, because the plaintiff recovered the amount of the bond from the estate of William Sharman, and the money brought into court, which amounted to a discharge of John Strohecker, under the assignment of the bond to the bank; and they cannot take advantage of any defect in, or under the assignment and execution of it, as it was prepared by the president of said bank, and attested by the cashier of said bank."

The court (BANKS, P. J.) charged the jury, that there was no proof of mistake or fraud, and the bank never having received the money, the plaintiff was entitled to recover, although the amount of the bond was recovered from William Sharman, and paid into court; and that the assignment being drawn by the president of the bank, and witnessed by the cashier, made no difference.

This was assigned for error.

*Hoffman* and *Porter*, for plaintiff in error.—The general rule, as to the construction of an agreement to guaranty, may be laid down thus: that no party shall be bound beyond the extent of the engagement which shall appear, from the expression of the security and the nature of the transaction, to have been in his contemplation at the time of entering into it; Fell on Guaranty, 116; Ludlow *v.* Simonds, 2 Caines's Ca. in Eq. 1. The liability of a surety is not to be extended by implication beyond the term of his contract; Miller *v.* Stewart, 9 Wheat. 680, 702, 703; U. S. *v.* Boyd, 15 Peters, 187. A contract of guaranty is a collateral engagement for another, as distinguished from an original and direct agreement for the party's own act. The obligation of a guaranty is discharged by the extinction of the debt or duty, or the discharge of the principal; Chitty on Con. 398, 701. The question is as to the legal effect of the assignment and covenant of John Strohecker. To what extent, and for what, did he bind himself? The guaranty, not the personal covenant of John Strohecker. The assignment and guaranty drawn by the bank. The power of attorney from Daniel and Leah his wife, part of the assignment of

John Strohecker to the bank, as it is referred to therein. Bond assigned not made payable to Leah, but to her husband, Daniel. The note given by John Strohecker to the bank, and for which he assigned the bond, was, it is but a fair and reasonable inference, for a debt of Daniel's. It is true the assignment was defectively drawn. But John Strohecker did not guaranty the sufficiency of the instrument, under which the bank took the bond, nor did his guaranty bind him to stand by and see that the money was paid to the bank. *Recovery* is defined to be, a trial and judgment. There was a recovery by the bank upon the bond, money sufficient to pay the bond made, when the guaranty of John Strohecker was complied with. They also cited Eddy *v.* Stanson, 21 Wend. 255; Comston *v.* McNair, 1 Wend. 457; Taylor *v.* Bullen, 6 Cowen; 2 Watts, 168.

*Smith* and *Pearson*, for defendants in error.—That the assignment was written, and its execution witnessed by the officers of the banks, the plaintiff's agents, cannot affect the case, no fraud or mistake being pretended. In the absence of fraud, a party is as competent to reduce a contract to writing as a third person. The assignment is an engagement on the part of John Strohecker that Sharman is able to pay, and that the bank shall receive the money, and so this court have always decided: 6 Watts, 100; 8 Watts, 190, 191; 9 Watts, 245, 248; 8 Watts & Serg. 469.

*June* 21. BELL, J.—The undertaking of the plaintiff's intestate to pay the amount of the bond to the Farmers' Bank, with all charges accruing thereon, " in case 'the same cannot be recovered of the within bound William Sharman," is in the nature of a contract of guaranty, which always implies the due prosecution of the claim at law against the debtor, and that this has failed of success, without any default in the party holding the guaranty, before the latter can call on the guarantor. The very terms of the contract sued on here, require the due exercise of this diligence; but it also promises eventual payment to the bank, should it fail to recover the amount of the bond from the obligor; Compton *v.* McNair, 1 Wend. 457. The facts which have attended this controversy from the commencement are reported, 6 Watts 96, 8 Watts, 188, and 9 Watts, 237: for it is an old dispute. It is not, therefore, necessary to repeat them here, though they may be referred to, as showing that the bank has prosecuted its supposed right to the money called for by Sharman's bond, with reasonable diligence and zeal; and that the final failure to collect it is ascribed to the imperfection of the assignment attempted by John Strohecker. That proper

steps were taken, in pursuance of this object, was not denied by the defendant below on the trial of the cause. His defence, as appears by the point upon which he asked the instruction of the court to the jury, and his course of argument here, is based on the notion that the amount of the bond having been actually recovered from the estate of the obligor, William Sharman, though never received by the bank, the contingency upon which the intestate was to become responsible has never arisen, and the defect which defeated the pretensions of the bank, being found in the attempted assignment drafted by its officers, the intestate's estate cannot be called on to make good the loss suffered by the bank. But to this we think the proper answers have been returned by the court below. In the absence of mistake or fraud, and none is imputed here, the assignment is to be taken solely as the deed of Strohecker, without regard to the person by whose hand it was put into form. It is his language that is employed, and his covenant that was made. Upon the reasonable construction of this covenant he undertook to insure, not only the ability of the obligor to pay, but that the bank, by the exercise of proper diligence, should actually receive the money, the payment of which was secured by the bank. One of the technical definitions of the word "recovery" is the actual possession of any thing or its value, by judgment of a legal tribunal; and it is not to be doubted that this is the sense in which the word was used in this covenant. The intestate having covenanted against every means of failure, except the *laches* of the plaintiff below, it follows the latter was entitled to a verdict. This was the view taken by the judge who tried the cause, and, consequently, there is no error in the instructions to the jury.

Judgment affirmed.