**ARNDT, PRESTON, CHAPIN, LAMB AND KEEN, Inc.,**

v.

**L-M MANUFACTURING COMPANY, Inc.**

Civ. A. No. 21628.

United States District Court
E. D. Pennsylvania.

July 24, 1958.

Frank K. Tarbox, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Erwin Lodge, Philadelphia, Pa., for defendant.

CLARY, District Judge.

The plaintiff, an advertising agency, brought this action on 9 separate claims against the defendant, a chain saw and small tractor manufacturer, for advertising services rendered in the amount of $4,213.04. The defendant in its answer denied liability on all 9 claims and counterclaimed against the plaintiff in the amount of $3,919, alleging late delivery and poor quality of a sales presentation manual, one of the items in dispute in this action. Specifically the defendant alleged that the failure to have this sales book for the Fall 1955 selling season caused a decline of its sales and the resultant loss.

The case was tried to the Court without a jury. From the pleadings and proof the Court makes the following

### Findings of Fact

1. Plaintiff is an incorporated advertising agency organized and existing under the laws of the State of Delaware, with its principal office at 160 North Fifteenth Street, Philadelphia, Pennsylvania.

2. Defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal office at Coatesville, Pennsylvania. It is engaged in the manufacture of chain saws, tractors and other small, powered equipment.

3. The sum of the matters in controversy exceeds $3,000 exclusive of interest and costs.

4. The plaintiff advertising agency commenced furnishing advertising serv-

ices to the defendant in the Summer of 1954 (N.T. 205) and, at all times pertinent to the determination of the issues of this case, was providing these services subject to the terms of a written contract between the parties dated April 29, 1955, as supplemented by a letter of the same date, (P–6).

5. The supplemental letter forming part of the written agreement contains the following paragraphs:

"1. No project or job on which normal charges are involved will be started without an estimate of costs for preparation (copy, layout, service) and/or production (art, engraving, typography, paste-up, processing, etc.); such estimates are to be approved by authorized client personnel in writing by issuance of L–M Manufacturing Co., Inc., purchase order. This includes costs for production of advertisements as well as collateral material.

"The above does not include development of plans, promotions, schedules, costs, etc.—for which no charge is normally made by the agency."

"2. Costs for job preparation (copy, layout, service) above are subject to revision or rejection if not acceptable, at no cost. If, however, they have been considered acceptable but their further development or use is unduly delayed or cancelled due to circumstances over which the agency has no control, such jobs will be billed and paid for according to approved estimates."

6. From on or about May 10, 1955 to October 5, 1955, the plaintiff did not carry out its duty under the provision of the contract requiring the submission of an estimate of costs and approval by the L-M Manufacturing Co., Inc. of said estimate before a project or job would be started. Defendant consented to this practice during the said period.

7. The contract between the parties does not provide for specific sums of money to be paid to the plaintiff for any of the work for which recovery is sought in this action.

### Count One

8. On or about May 10, 1955, the defendant requested the plaintiff to design and develop a sales presentation book to be used by defendant's sales representatives when contacting distributors and dealers in connection with chain saws manufactured by defendant.

9. Plaintiff created and developed both copy and layout for such a sales book and presented it to the defendant on July 28, 1955. The defendant requested changes in this material. The plaintiff made such changes and resubmitted the material to the defendant on September 6, 1955.

10. Defendant accepted this material and kept it without making any complaint as to its content or without requesting that the agency further revise or develop it.

11. Further development or use of this book was prevented by circumstances over which the plaintiff had no control, to wit: the failure of the defendant to develop a time payment plan which defendant wished included in the book.

12. The fair and reasonable value of plaintiff's services in the development of this sales presentation book was $1,458.

### Count Two

13. On or about May 16, 1955, defendant requested plaintiff to design and develop a publicity kit to be sent by defendant to new dealers who were about to feature the chain saws manufactured by defendant, which kit would contain material and directions to assist dealers in advertising the fact that they sold the said chain saws.

14. No estimate of the costs of this job was submitted to the defendant.

15. Plaintiff created and developed the publicity jacket and delivered this material in copy and layout form to the defendant on June 28, 1955.

16. Defendant accepted this material and kept it without making any complaint or request that the agency further revise or develop it.

17. Further development or use of this publicity kit was prevented by circumstances over which the plaintiff had no control, to wit: the failure or neglect of Mr. Leonard M. Strunk, President and General Manager of the defendant, to give his approval to this project, which failure or neglect was due to the pressure of other business.

18. The fair and reasonable value of plaintiff's services in designing and developing the publicity jacket was $63.

### Count Three

19. On or about May 16, 1955, defendant, acting through Leonard M. Strunk, requested plaintiff to develop a publicity jacket to be used by the defendant to enclose and send to retail distributors of defendant's chain saws, preprints of advertisements of said saws which were to appear in various publications circulated in the sales areas of such dealers.

20. No estimate of the costs of this job was submitted to the defendant.

21. Plaintiff created and developed the preprint jacket in copy and layout form and delivered this material to the defendant on July 28, 1955.

22. Defendant accepted the preprint jacket and kept it without making any complaint or request that the agency further revise or develop it.

23. Further development or use of this preprint jacket was prevented by circumstances over which the plaintiff had no control, to wit: the indecisiveness of Mr. Strunk in preparing his advertising program which prevented the preparing and mailing of preprints to dealers.

24. The fair and reasonable value of the plaintiff's services in the creation and development of the preprint jacket was $146.44.

### Count Four

25. On or about June 13, 1955, defendant, acting through Leonard M. Strunk, requested plaintiff to develop an advertisement of defendant's "Chipmunk" tractor to be placed in the garden section of Sunday newspapers.

26. No estimate of the costs of this job was submitted to the defendant.

27. Plaintiff did all the work necessary for the design and development of the newspaper advertisement and delivered it in copy and layout form to the defendant on June 28, 1955.

28. Defendant accepted the advertisement and kept it without any complaint or request that the agency further revise or develop it.

29. The season for selling tractors to the lawn trade is in the early Spring of the year.

30. The use of this advertisement was prevented by circumstances beyond the control of the plaintiff, to wit: the late date (after the selling season had started) of Mr. Strunk's request to the agency for the development of the advertisement.

31. The fair and reasonable value of the services performed by the plaintiff in the development of this advertisement was $58.83.

### Count Five

32. On or about July 28, 1955, defendant requested plaintiff to design and develop a broadside advertising the line of chain saws manufactured by the defendant, which broadside was to be mailed by chain saw dealers to potential customers.

33. No estimate of the costs of this job was submitted to the defendant.

34. Plaintiff created and developed the broadside advertising defendant's chain saws and submitted it in copy and layout form to the defendant on September 6, 1955.

35. Defendant accepted the advertising broadside and kept it without any complaint or request that the agency further revise or develop it.

36. The use of this broadside was prevented solely by the actions of the defendant.

37. The fair and reasonable value of the work performed by the plaintiff in the design and development of the broadside was $346.50.

### Count Six

38. On or about October 12, 1955, plaintiff voluntarily prepared and submitted material for a new advertising campaign for the sale of chain saws to farmers and professional woodcutters.

39. The defendant did not request the plaintiff to prepare this material.

40. The defendant never accepted this material.

41. The fair and reasonable value of the services rendered in preparing this new advertising campaign was $964.50.

42. The defendant is not indebted to the plaintiff for the value of these services.

### Count Seven

43. P–28 is a letter dated January 12, 1956 from Mr. Robert Arndt to Mr. Leonard M. Strunk. The letter proposes a publicity program for the "Chipmunk" tractor not to exceed $1,000 commencing immediately upon acceptance by Mr. Strunk and concluding April 1.

44. P–29 is a letter dated January 16, 1956 from Mr. Leonard M. Strunk to Mr. Robert Arndt authorizing the plaintiff to undertake the publicity program proposed in Mr. Robert Arndt's letter of January 12, 1956.

45. These two letters constituted a separate written contract supplementing the original written contract of April 29, 1955.

46. Pursuant to this agreement the plaintiff developed a series of news releases concerning the "Chipmunk" tractor manufactured by the defendant, which releases were to be sent with photographs to the editors of all appropriate trade and consumer publications to advertise the said tractor.

47. Plaintiff created and developed this series of news releases and delivered them to the defendant. Mr. Leonard Strunk requested certain changes in the releases. Plaintiff made these changes and redelivered the releases to the defendant.

48. Defendant accepted this material and made use of it.

49. The fair and reasonable value of the work performed by the plaintiff in creating and developing these releases was $453.14.

### Count Eight

50. Also pursuant to the supplementary agreement of January 16, 1956, the defendant requested plaintiff to handle the publicity concerning defendant's "Chipmunk" tractor at the New York City Toy Fair to be held in March by preparing news releases, arranging for the advance display of two tractors at the Hotel McAlpin and endeavoring to obtain news coverage of the "Chipmunk" display at the Fair.

51. Plaintiff performed the requested services which included preparing and delivering news releases to the New York newspapers and to press representatives at the Toy Fair; arranging for the advance display of defendant's tractors at the press preview at the Hotel McAlpin and obtaining as much publicity as possible for the defendant's tractors.

52. The fair and reasonable value of these services was $301.80.

### Count Nine

53. On October 5, 1955, the plaintiff and the defendant held a conference, the purpose of which was to go over agency charges for services performed on behalf of the defendant.

54. As a result of this conference the plaintiff and defendant agreed upon a procedure to be followed in the development of all advertising materials by the plaintiff for the defendant.

55. One of the steps required by this procedure was the submission of job estimates and approval of the estimate by the defendant.

56. D–7 is a letter dated January 3, 1956 from Mr. Leonard M. Strunk to Mr. John Arndt. The letter states that the defendant expects the plaintiff to adhere to the procedure agreed upon at the meeting of October 5, 1955.

57. D–6 is a letter dated January 6, 1956 from Mr. John Arndt to Mr. Leonard Strunk. It is a reply to Mr. Strunk's

letter of January 3, 1956, and it assures him that the plaintiff shall scrupulously adhere to everything covered in the October 5, 1955 memorandum.

58. The conference of October 5, 1955, and the exchange of letters in January 1956, resulted in the reinstatement of the requirement of the original contract of April 29, 1955, that job estimates be submitted for the defendant's approval. This requirement had been waived by the defendant from on or about May 10, 1955 until October 5, 1955.

59. On or about February 17, 1956, defendant requested plaintiff to develop a picture frame mailing piece and two jumbo postcards to be sent to toy buyers whose pictures would be taken at the "Chipmunk" tractor display at the New York City Toy Fair, which material would induce buyers to purchase the tractor.

60. Plaintiff created and developed this picture frame mailing piece and two jumbo postcards and delivered them in copy and layout form on February 17, 1956.

61. This material was accepted and approved by the defendant at the conference of February 17, 1956, and returned to the agency for completion.

62. Plaintiff completed the picture frame mailing piece and delivered it to the defendant in final paste-up form on or about February 27, 1956.

63. Plaintiff completed the two jumbo postcards and delivered them to the defendant in final paste-up form on or about February 29, 1956.

64. No estimate of the charges for this job was ever submitted to the defendant for its approval.

65. Defendant by his approval and acceptance of the material waived the requirement of the submission of a job estimate.

66. The fair and reasonable value of the services performed by the plaintiff in the creation and development of the picture frame mailing piece and the two jumbo postcards was $418.83.

67. All of the work done by the plaintiff in connection with each of these nine counts was in accordance with commercially acceptable advertising standards.

68. Paragraph II k of the original written agreement of April 29, 1955, is not applicable to the matters in controversy in this action. It applies only where there is a cancellation of part or all of "an authorized advertising schedule". There is no evidence in this action of the cancellation of an advertising schedule.

### Counterclaim

69. The defendant produced no evidence of the extent to which it was damaged, if any, during the 1955 selling season for chain saws by reason of its not having a sales presentation book or that such damage, if any, was in any way caused by the plaintiff.

### Discussion

The defendant denies liability in this case on the following grounds:

(1) The plaintiff failed to submit estimates of job costs as required by the written contract between the parties and that the defendant never waived this requirement.

(2) Under Paragraph II k of the written contract of April 29, 1955, the plaintiff is only entitled to recover actual expenditures when an advertising schedule is cancelled after the creative work has begun. Defendant contends that the plaintiff has failed to prove its actual expenditures since the consideration claimed at the trial included, by plaintiff's own testimony, (N.T. 185–186), overhead and profit.

(3) The plaintiff has failed to prove the reasonable value of its services in that its two witnesses on this point were not competent.

(4) The plaintiff's services on each of the nine counts were unsatisfactory and failed to meet commercially acceptable advertising standards.

As to the defendant's first contention, "it is well settled that a written

agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three." Elliott-Lewis Corp. v. York-Shipley, Inc., 1953, 372 Pa. 346, 350, 94 A.2d 47, 49; see also Dora v. Dora, 1958, 392 Pa. 433, 141 A.2d 587.

■ The facts as testified to by both the plaintiff and defendant clearly show that the written agreement was modified by the subsequent conduct of the parties and that the defendant waived the estimate requirement from about May 10, 1955 until October 5, 1955. The Court finds that the conference of October 5, 1955 and the exchange of letters in January, 1956, resulted in a reinstatement of the original requirement that estimates be submitted. The only services performed subsequent to October 5, 1955 (exclusive of the publicity for the Toy Fair as to which there is a separate contract) which are in dispute are those rendered on Count Nine, i. e., the creation of the picture frame mailing piece and the jumbo postcards. No written estimate of the costs of this job was submitted to the defendant. However, the defendant at the conference of February 17, 1956, approved and accepted the material prepared by the plaintiff in copy and layout form and authorized the completion of this project. In the face of this conduct the defendant cannot be heard to say that there was no waiver of the estimates. True, there was no express waiver, but in this instance the actions of the defendant speak louder than his words.

■ Defendant's second contention raises the question of the applicability of Paragraph II k of the original agreement of April 29, 1955. This paragraph reads as follows:

"Should you cancel part or all of an authorized advertising schedule after the creative work has been begun by us, we bill for any expenditures for layouts, copy, art, engravings, typography, noncancellable time or space (short-rates, and any other items), plus a mutually agreeable charge for preparation and service."

The words "plus a mutually agreeable charge for preparation and service" were crossed out and initialed by the parties on April 29, 1955. The defendant contends that by virtue of this agreement the plaintiff is only entitled to recover actual expenditures and since the amounts claimed include overhead and profit, the plaintiff has failed to prove its actual expenditures and, therefore, there can be no recovery in this action.

Paragraph II k of the agreement of April 29, 1955 speaks of cancelling part or all of "an authorized advertising schedule * * *." Mr. Robert Arndt testified that this paragraph refers to the cancellation of a complete advertising schedule and not to specific jobs. The Court finds that there was no advertising schedule involved and that each of these counts refers to a specific job and that Paragraph II k is not involved in this case.

Defendant further alleges that the plaintiff has failed to prove the reasonable value of its services in that both Mr. Signor and Mr. Morgan, who testified as to the reasonableness of the amounts claimed, were incompetent to testify on this point.

■ Defendant objects to Mr. Signor's testimony as to the reasonableness of the charges chiefly on the ground that Mr. Signor admitted that he had never, up to May 10, 1955, the day on which he began work for the plaintiff, billed anyone for art work or copy work. (N. T. 66). However, Mr. Signor also testified that he has been in the advertising business since 1946 and that during most of his advertising career he has been buying advertising from agencies such as the plaintiff and that frequently it was his job to judge whether or not the charges were fair for the work accomplished. (N.T. 16, 17 and 66.) On this basis the Court concludes that Mr. Signor was competent to testify to the reasonableness of the charges made by the plaintiff.

■ Defendant objects to the competency of Mr. Morgan on the basis of his

admitted lack of knowledge of the chain saw industry; his lack of knowledge of the scheme of distribution of this defendant and of the fact that he was never an account executive for a chain saw manufacturer (N.T. 393–394).

Mr. Morgan testified that he has been in the advertising business for 36 years, 28 of which were spent with advertising agencies. He also testified that he has done both copy and layout work for advertising agencies and that for the past six or seven years he has been responsible for all the creative activities of the Richard A. Foley Advertising Agency of Philadelphia of which he is a part owner (N. T. 387–388). He further testified that the problems he has handled were similar to the ones he heard Mr. Signor and Mr. Strunk describe from the witness stand (N.T. 395). The attorney for the defendant did not object to the testimony of Mr. Morgan and in fact stipulated that Mr. Morgan would testify that in his opinion the charges made were fair and reasonable (N.T. 392).

On the basis of the above recited facts the Court concludes that Mr. Morgan was competent to testify as to the reasonableness of the charges made by the plaintiff.

Finally, the defendant failed to produce any evidence, other than from Mr. Strunk, that the work done by the plaintiff failed to meet commercially accepted advertising standards. The Court finds that the work done by the plaintiff did meet commercially accepted advertising standards.

## Counterclaim

This aspect of the case requires little discussion. The defendant produced no evidence of any damage to it by reason of its failure to have a sales presentation book for the 1955 selling season or that the plaintiff in any way caused the defendant to be damaged. The only evidence presented by the defendant on this question was Mr. Strunk's statement that he felt that his sales suffered during the 1955 season because of the lack of this sales presentation book. Obviously, this is not sufficient to support the defendant's counterclaim.

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. Plaintiff provided advertising services to the defendant pursuant to a written contract between the parties dated April 29, 1955, as supplemented by a letter of the same date.

3. From on or about May 10, 1955 to October 5, 1955, the provision of the original contract of April 29, 1955, requiring plaintiff to submit job cost estimates for defendant's approval was modified by the conduct of the parties so that the submission and approval of such an estimate was not a condition precedent to defendant's obligation to pay for plaintiff's services.

4. The plaintiff is entitled to recover the fair and reasonable value of the services rendered by it on Counts One, Two, Three, Four and Five.

5. The fair and reasonable value of said services is $2,072.77.

6. The plaintiff is not entitled to recover for services rendered on Count Six since the defendant never requested the material prepared by the plaintiff and never accepted it after it was prepared.

7. Mr. Robert Arndt's letter of January 12, 1956 to Mr. Leonard M. Strunk and Mr. Strunk's reply of January 16, 1956, constituted a separate written contract supplementing the original agreement of April 29, 1955.

8. Plaintiff is entitled to recover under this supplemental agreement the fair and reasonable value of the services rendered by it on Counts Seven and Eight.

9. The fair and reasonable value of said services is $754.94.

10. The conference of October 5, 1955, Mr. Leonard Strunk's letter of January 3, 1956 to Mr. John Arndt, and Mr. Arndt's reply of January 6, 1956, resulted in the reinstatement of the requirement of the original contract of April 29, 1955, that job cost estimates be submitted to the defendant for its approval.

11. Defendant's approval and acceptance of the material prepared by the plaintiff on Count Nine resulted in a second waiver of the requirement that cost estimates be submitted for defendant's approval so that the submission and approval of such an estimate was not a condition precedent to defendant's obligation to pay for these services.

12. Plaintiff is entitled to recover the fair and reasonable value of the services rendered by it on Count Nine.

13. The fair and reasonable value of said services is $418.83.

14. All of the work done by the plaintiff in connection with each of these Nine Counts was in accordance with commercially acceptable advertising standards.

15. Plaintiff's right of recovery is not conditioned upon defendant's use of, or receipt of benefits from the material requested by the defendant. Kastor & Sons Adv. Co. v. Grove Laboratories, D.C.E.D.Mo.1945, 58 F.Supp. 1011, 1016; 5 Corbin, Contracts Section 1107 and Restatement, Contracts Section 348 and comments thereto.

16. Mr. John Signor and Mr. Albert Morgan were competent to testify to the fair and reasonable value of the services rendered by the plaintiff to the defendant on each of these Nine Counts.

17. Paragraph II k of the original contract of April 29, 1955, is not applicable to this case.

18. The plaintiff is entitled to judgment against the defendant in the sum of $3,246.54 with interest at the rate of 6% from May 1, 1956.

19. The plaintiff is entitled to judgment in its favor on defendant's counterclaim.

Each of the parties has submitted requests for findings of fact and conclusions of law. To the extent that they are consistent with the above findings and conclusions they are affirmed. To the extent that they are inconsistent with the above findings and conclusions they are denied with an exception. Accordingly, a formal order will be entered.