398 A.2d 183

**ATALANTA CORPORATION, a corporation, Appellant,**

**v.**

**OHIO VALLEY PROVISION CO., a corporation, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Decided Jan. 24, 1979.

Reargument Denied March 14, 1979.

Thomas W. Trimm, Pittsburgh, for appellant.

Alvin J. Ludwig, Pittsburgh, for appellee.

Before CERCONE, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant Atalanta Corporation (Seller) is in the business of selling meat products wholesale to packing houses and meat processors. Appellee Ohio Valley Provision Company

(Buyer) is a large meat packaging and processing business in Allegheny County, Pennsylvania. Seller brought this lawsuit to recover damages for Buyer's alleged failure to provide a bank guaranty to secure the payment of the purchase price of a quantity of Australian Shank meat from Seller. Seller re-sold Buyer's order to another customer at a loss of $7,621.48, the stipulated amount of damages if liability was found. The lower court, in a non-jury trial, found that Buyer had not breached the contract, and entered judgment for Buyer. Seller now appeals from the order to the lower court dismissing Seller's exceptions. We reverse.

The parties started doing business in January, 1974, when Seller's salesman, Joseph Nazarette, solicited Buyer's purchase of a quantity of Irish Beef Trimmings stored in Seller's Pittsburgh warehouse. Nazarette requested Buyer to furnish Seller with a bank guaranty to secure the payment of the purchase price. On February 20, 1974, the Allegheny Valley Bank of Pittsburgh (Bank) sent the following letter to Seller:

"One of our valued customers, Ohio Valley Provision Company, has placed an order with your company in the amount of approximately $19,000.00 and we understand that you want a guarantee before releasing the meat products to them.

"You may be assured that this amount will be paid by the above mentioned company within 10 days. This company has been a customer of ours since their organization and maintains substantial balances with us.

> s/
> K. W. Gundlach
> President"

On February 22, 1974, Robert Jacquith, Seller's credit manager, telephoned Gundlach, and asked him whether this letter was the Bank's guaranty, and, as a result of that conversation, subsequently the Irish Beef Trimmings were released to Buyer, who paid the full purchase price thereof.

About this same time, Nazarette solicited from Buyer a purchase of a quantity of Australian Shank meat. Seller

sent a written confirmation of the sale, again requiring a bank guaranty prior to delivery, but it was improperly addressed and never received by Buyer. When no bank guaranty on the Australian Shank appeared forthcoming, Nazarette, on May 8, 1974, personally appeared at Buyer's place of business and demanded same from Richard Rzaca, President of Buyer. Rzaca sent Nazarette to the Bank, and telephoned ahead to E. R. Miller, Vice-President of the Bank, instructing him to prepare a guaranty for Seller. Nazarette arrived at the Bank and telephoned Jacquith, who now instructed Nazarette to get a letter of credit from the Bank to pay for the Australian Shank prior to delivery. Miller refused to give a letter of credit, but gave Nazarette a letter of the Bank's guaranty which was identical to the letter of February 20, except that the different purchase price of the Australian Shank was entered. Nazarette accepted the letter and returned to New York. However seller refused to ship the order, and commenced the instant lawsuit.

Seller contends that it was justified in not delivering the Australian Shank because Buyer breached their contract by not supplying Seller with a Bank guaranty to secure the purchase price. Implicit in this contention is the argument that the Bank's letter of May 8, 1974, did not constitute a guaranty. We agree.

A guaranty is commonly used as a sales financing device, where the seller will ship on account only when the buyer's payment for the merchandise is guaranteed by a third party. *See Hartley Silk Mfg. Co. v. Berg*, 48 Pa.Super. 419 (1911). Thus, a guaranty is a promise to pay the debt of another when the beneficiary is unable, after due prosecution, to collect the amount owed him by the debtor. *Strohecker v. Farmer's Bank*, 6 Pa. 41, 44 (1847). "A technical guaranty is that the debtor will be able to pay and this involves a diligent effort of the creditor to collect from his debtor before he proceeds against the guarantor." *Hartley, supra* at 429. It is usually the word "guarantee" which distinguishes the secondary liability of the guarantor from

the original liability of the debtor. *Kemmerer v. Wilson*, 31 Pa. 110, 113 (1857). We think it is rather obvious that the writing given by the Bank here is not a guaranty, since it does not promise that the Bank will pay the debt of the Buyer. Rather, the letter expresses the Bank's opinion of Buyer's creditworthiness and its ability to pay the original liability.

Appellee Buyer argues that the word "guarantee" need not appear in the writing in order to make it a guaranty, and that the words used should be interpreted in light of the parties' prior Irish Beef Trimmings transaction, where delivery was made, citing *Essex County Acceptance Corp. v. Heilman*, 64 Pa.Dist. & C. 207 (Pa.C.P.1947) and 38 Am.Jur. 2d, Guaranty § 5. However, in *Essex* the guarantor did use the requisite language of *Kemmerer* and *Strohecker*, namely: "I will guarantee the payment to you of the sum of $683.60 owed to you by [debtor] . . . ." *Essex, supra* at 209. We are also unwilling to ignore the plain meaning of the words used by the Bank to look at prior transactions, since as professional guarantors who drafted the letter, the instrument must be construed strictly against the Bank, and in favor of the creditor. *Land Title Bank & Trust Co. v. Baron*, 341 Pa. 241, 19 A.2d 62 (1941).

Order reversed. The court below is directed to enter judgment in favor of Seller in the principal amount of $7,621.48.