414 A.2d 123

**ATALANTA CORPORATION, Appellee,**

v.

**OHIO VALLEY PROVISION CO., a corporation, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1980.

Decided May 2, 1980.

Alvin J. Ludwig, M. Victoria Geddis, Ludwig, Schauffler, Klein & Geddis, Pittsburgh, for appellant.

Thomas W. Trimm, James A. Prostko, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an Order of the Superior Court[1] which reversed an Order of the Court of Common Pleas of Allegheny County holding in favor of appellant, Ohio Valley

---

1. *Atalanta Corporation v. Ohio Valley Provision Co.*, 263 Pa.Super. 374, 398 A.2d 183 (1979).

Provision Company (Buyer), in an action for breach of contract brought by appellee, Atalanta Corporation (Seller). Seller, engaged in the business of distributing meat products to processors, brought suit to recover damages for the alleged failure of Buyer, a large meat processing business, to provide a bank guaranty to secure payment for a quantity of meat ordered from Seller.

In January, 1974, Seller's salesman solicited from Buyer a $19,000 order for Irish beef trimmings. Subsequently, the salesman requested that Buyer furnish a bank guaranty securing payment of the purchase price and, consequently, on February 20, 1974, Buyer's bank sent a letter to Seller containing language identical (except for date and dollar amount) to the subsequent letter dated May 8, 1974 which appears hereafter. On February 22, 1974, Seller's credit manager received the letter but was dissatisfied with the language therein because of an ambiguity as to whether the letter constituted a guarantee or a mere credit reference. The credit manager telephoned the president of Buyer's bank who said the letter was a guarantee. The Irish beef trimmings were then released to Buyer in March of 1974 and payment was made by Buyer.

On or about February 22, 1974, the same salesman solicited a much larger order for a $33,000 sale to Buyer of Australian Shank Meat. A written confirmation of sale containing the words "bank guarantee due prior to delivery" was mailed to Buyer but due to an incorrect address was never received. On May 8, 1974, when no bank guarantee had been forthcoming, the salesman visited Buyer and demanded such a guaranty. Buyer's president agreed to have one furnished, dispatched the salesman to go the bank, and telephoned ahead to the bank's vice president instructing him to prepare a guaranty. While at the bank, the salesman telephoned Seller's credit manager who stated he wanted a letter of credit from the bank rather than a bank guarantee. Buyer's president, however, declined to agree to have a letter of credit supplied so the following letter was sent by the bank instead:

"May 8, 1974

Atalanta Corporation
1725 Varick Street
New York, New York 10013
Attention: Credit Manager
Gentlemen:

One of our valued customers, Ohio Valley Provision Company has placed an order with your company in the amount of approximately $33,000.00 and we understand that you want a guarantee before releasing the meat products to them.

You may be assured that this amount will be paid by the above mentioned company within 10 days. This company has been a customer of ours since their organization and maintains substantial balances with us.

Very truly yours,

(s)  E. R. MILLER

E. R. MILLER

President"

After receipt of this letter, Seller communicated to Buyer and the bank that a sufficient bank guaranty had not been received; hence, shipment of the goods was never made.

■ On May 8, 1974 a contract was formed requiring a bank guarantee as a term of payment. Buyer contends that Seller's request for a letter of credit constituted a material breach of contract which excused Buyer from further performance including the furnishing of a bank guarantee. We disagree. By asking for a letter of credit, after a contract had been formed between Buyer and Seller's sales agent, Seller did not breach the contract but rather requested a material change in contract terms which was objected to and did not become part of the contract. Hence, the contract remained in its original form requiring a bank guarantee. After receipt of the bank's letter of May 8, 1974, Seller communicated to Buyer and to Buyer's bank that a sufficient guaranty had not been received. Consequently, Seller never shipped the ordered goods.

If the letter of May 8, 1974 constituted the promised bank guarantee then Seller breached its obligation to deliver the goods. Buyer and Seller do not dispute the existence of a contract binding them but rather implicitly focus their arguments on an analysis of whether, based on the bank's letter of May 8, 1974 and the attendant circumstances, the letter would likely have created bank liability to Seller in the event the goods had been delivered and Buyer refused to pay. It is not necessary to determine the probable ultimate effect of the letter in question. The overriding issue is simply whether the parties exchanged that which was *bargained for* by the parties and reasonably contemplated by the same as the mode of performance, termed by them as a "bank guaranty".

By requiring a bank guaranty in a transaction, the Seller's purpose, obvious to both parties, is to avoid the risk of default in payment. Both parties are, therefore, chargeable with knowledge when a "bank guarantee" is bargained for that the Seller is not bargaining for a document of such uncertain meaning that, in light of the circumstances, acceptance of the same would force a reasonably cautious businessman to knowingly be exposed to the very risk of non-payment against which he sought to ensure. This case, then, is to be distinguished from those where the effect of a purported guaranty which has already been accepted by a Seller is to be determined. A guaranty is a promise to pay the debt of another when the creditor is unable, after due prosecution, to collect the amount owed by the debtor. *Strohecker v. Farmers Bank*, 6 Pa. 41, 44 (1847). The alleged guarantee in question, without regard to whether under rules of construction and in light of the circumstances an arguable liability for the bank in a suit by Seller may have existed, could not have constituted the "Bank Guarantee" necessarily contemplated as *suitable for commercial reliance* by the parties. A cautious Seller could reasonably interpret the letter of May 8, 1974 as a carefully worded attempt by the bank to avoid obligating itself by giving only an opinion as to the customer's reliability and credit-worthi-

ness without promising that the bank would pay the obligation upon the customer's failure to do so. In the prior sale in which Seller was furnished with a letter dated February 20, 1974 like that dated May 8, 1974, the Seller questioned the sufficiency of the language and although the goods were subsequently released in that *one* smaller transaction a sequence of prior dealing[2] is not present to support a conclusion that in the transaction in question, where Seller had more of a financial stake, the parties intended less than a reasonably unambiguous guaranty to be furnished.

Order affirmed.

ROBERTS, J., filed a concurring opinion in which EAGEN, C. J., joins.

LARSEN, J., concurs in the result.

KAUFFMAN, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

I concur in the result reached by the majority. It is clear that the buyer promised the seller, as part of their sales contract, to provide a bank guarantee for the purchase price, and that the buyer breached this material term of the contract. See *Atalanta Corp. v. Ohio Valley Provision Co.*, 263 Pa.Super. 374, 398 A.2d 183 (1979).

EAGEN, J., joins this opinion.

2. § 1–205. Course of Dealing and Usage of Trade

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

\* \* \* \* \* \*

(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

Act of April 6, 1953, P.L. 3, § 1–205 (reenacted October 2, 1959, P.L. 1023, § 1), 12A P.S. § 1–205 (1970).

KAUFFMAN, Justice, dissenting.

The majority concludes that the letter supplied by Buyer's bank ("the May 8 letter") was so ambiguous that Seller was under no obligation to accept it as a bank guaranty.[1] I disagree.

In January, 1974, Buyer agreed to purchase meat from Seller for a price of $19,000. In response to Seller's request for a bank guaranty covering the transaction, Buyer's bank sent Seller a letter on February 20, 1974 ("the February 20 letter").[2] Buyer's bank thereafter orally confirmed to Seller that its letter was in fact a guaranty. The meat was delivered to Buyer on March 20, 1974 and paid for six days later.

On February 22, 1974, Buyer and Seller orally entered into the transaction before us for the purchase and sale of meat for a price of approximately $33,000. In a written confirmation of the sale dated February 26, 1974, Seller included the phrase "bank guaranty due prior to delivery." Because this

---

1. The May 8 letter, written on bank stationery, provided:

May 8, 1974

Atalanta Corporation
1725 Varick Street
New York, NY 10013

Attention: Credit Manager

Gentlemen:
   One of our valued customers, Ohio Valley Provision Company has placed an order with your company in the amount of approximately $33,000.00 and *we understand that you want a guarantee before releasing the meat products to them.*
   You may be *assured* that this amount will be paid by the above mentioned company within 10 days. This company has been a customer of ours since their organization and maintains substantial balances with us.

Very truly yours,

(s)  E. R. Miller
     E. R. Miller
     President

(Emphasis added)

2. The February 20 letter is identical in substance to the May 8 letter which is quoted in note 1, *supra*.

confirmation was misaddressed, Buyer did not receive it until this litigation commenced, and did not know Seller required a guaranty until May 8, 1974, when it was orally requested by Seller. At that time Buyer gave Seller a copy of its latest financial statement and bank balance, and referred Seller to its bank for the guaranty. When Seller arrived at the bank, however, it demanded a letter of credit rather than a guaranty. This demand was rejected, but Seller was given the May 8 letter. Despite the fact that the May 8 letter was identical to the February 20 letter in all material respects, Seller arbitrarily rejected it as a bank guaranty, sold the meat to another customer at a loss of $7,621.48, and commenced this action.

In light of the prior transaction between the parties and the circumstances surrounding the preparation and delivery of the May 8 letter, I conclude that Buyer intended to, and in fact did, deliver a bank guaranty to Seller. *See Restatement (Second) of Contracts* § 249 (1973); A. Corbin, 3 *Corbin on Contracts,* § 542, at 100–102 (1960); S. Williston, 5 *Williston on Contracts,* § 649 at 16.

This Court repeatedly has held that an agreement may be interpreted by reference to surrounding actions and words between the contracting parties. *See Gloeckner v. Baldwin Township School District,* 405 Pa. 197, 175 A.2d 73 (1961); *Cerbo v. Carabello,* 376 Pa. 571, 103 A.2d 908 (1954); *Furjanick Estate,* 375 Pa. 484, 100 A.2d 85 (1953). *Accord Arndt, Preston, Chapin, Lamb & Keen, Inc. v. L–M Mfg. Co.,* 163 F.Supp. 406 (E.D.Pa.1958), affirmed 262 F.2d 343 (3d Cir. 1958).

It is undisputed that: (1) Buyer's bank confirmed to Seller that the February 20 letter, identical in substance to the May 8 letter, constituted a guaranty; (2) Seller delivered the meat in the virtually simultaneous transaction and was paid promptly; (3) the May 8 letter was given by Buyer's bank in response to Seller's request for a guaranty in a transaction entered into on February 22, 1974; (4) in the May 8 letter, the Bank expressly recognizes that it is in response to Seller's request for "a guarantee."

In these circumstances, the May 8 letter was a bank guaranty which Seller could have enforced in the event of default by Buyer. See *Land Bank & Trust Co. v. Baron*, 341 Pa. 241, 247, 19 A.2d 62, 65 (1941) (Holding that ambiguity in a written instrument will be resolved against the party that drafted the instrument.)

Accordingly, I would hold that Buyer did not breach the contract and would reinstate the trial court's judgment.