440 A.2d 579

**ROBERT MALLERY LUMBER CORPORATION,**

**v.**

**B. & F. ASSOCIATES, INC., A/K/A Valley Wood Products and United Penn Bank of Wilkes-Barre, Pennsylvania,**

**Appeal of UNITED PENN BANK OF WILKES-BARRE, PENNSYLVANIA.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Jan. 19, 1982.

Petition for Allowance of Appeal Denied June 4, 1982.

504

Anthony J. Lumbis, Wilkes-Barre, for appellant.

Daniel F. Glassmire, Coudersport, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is an appeal from judgment on the pleadings for $25,000 entered in favor of ROBERT MALLERY LUMBER CORPORATION, appellee (hereinafter, MALLERY LUMBER) and against the UNITED PENN BANK OF WILKES-BARRE, PENNSYLVANIA, appellant (hereinafter, THE BANK).

The Complaint consists of two Counts, the first against B. & F. ASSOCIATES, INC. (hereinafter, B. & F.), a purchaser of lumber products, for $21,714.36 and interest for lumber sold to it by Mallery Lumber, and the second Count against The Bank for $25,000 as guarantor of the purchase obligations of B. & F. to Mallery Lumber.

The Bank's Answer denies liability and asserts by way of New Matter that any obligation it may have had to Mallery Lumber has been discharged. Mallery Lumber replied to the New Matter and The Bank moved for judgment on the pleadings. Responding to the Motion, the lower Court directed that Judgment be entered for $25,000 in favor of Mallery Lumber and against The Bank.

The facts out of which this litigation arises are not in dispute. Mallery Lumber produces and supplies northern hardwood lumber in a variety of species, sizes and grades to its customers. B. & F. was a purchaser of lumber products from Mallery Lumber. On or about May 15, 1977, Mallery

Lumber and B. & F. entered into negotiations concerning the terms on which Mallery Lumber would continue to produce and supply lumber to B. & F. on an on-going basis. Mallery Lumber wanted satisfactory assurance that its invoices would be paid. It was agreed at that time that B. & F. would attempt to negotiate an agreement with a reliable third party, preferably The Bank, whereby payments to Mallery Lumber would be assured. B. & F. undertook such a negotiation with The Bank and succeeded in obtaining a $50,000 line of credit of which $25,000 was to be reserved for purchases from Mallery Lumber.

Under date of June 8, 1977, The Bank notified Mallery Lumber of this agreement by a letter which read as follows:

Mallery Lumber Co.
Emporium
Pennsylvania 15834
Gentlemen:
    RE:  B. & F. Associates, Inc.
          T/A Valley Wood Products, Inc.

This is to inform you that United Penn Bank has established a $50,000.00 line of credit for the above customer, of which $25,000.00 is reserved for purchases from Mallery Lumber Company.
We trust this will be sufficient to permit you to continue to serve the needs of our mutual customer.
                Very truly yours,
                W. B. Simmers
                Senior Vice President
WBS:lms
CC:  B. & F. Associates, Inc.

Mallery Lumber accepted the terms stated in the letter of June 8 in the following reply under date of June 10:

Mr. Wesley B. Simmers
Senior Vice President
United Penn Bank
Wilkes-Barre, Pennsylvania 18711

Dear Mr. Simmers:

Your letter of June 8, 1977 re Valley Wood Products is acceptable for our needs except, due to an apparent oversight, it was not signed. The letter is, therefore, being returned for signature.

Very truly yours,
ROBERT MALLERY LUMBER
CORPORATION
John T. Rogers
Controller

JTR:rpz

Enclosure

Thereupon, the Senior Vice President of The Bank signed the letter of June 8 and returned it to Mallery Lumber.

Unknown to Mallery Lumber, The Bank deposited $50,000 in the checking account of B. & F. on July 6, 1977, and on the same day B. & F. paid Mallery Lumber $27,478.23 in payment of its then outstanding indebtedness. Mallery Lumber had no notice of the bank loan or that The Bank considered its obligation to Mallery Lumber either fulfilled or terminated.

On the assumption that the letter of June 8 was in effect, Mallery Lumber made a series of sales to B. & F. between August 26 and December 9, 1977, in the aggregate amount of $38,213.36 [1]. B. & F. made payments on account which reduced the unpaid balance to $21,714.36, but defaulted thereafter. It is this unpaid balance, with interest, for which Mallery Lumber brought suit against The Bank on its $25,000 reservation of funds to cover purchases from Mallery Lumber.

The Bank contends that the letter of June 8 was not a Letter of Credit as defined in the Uniform Commercial Code, that it was not a guaranty because there was no consideration and no promissory intent, and that there was no promissory estoppel precluding a judgment in its favor because there had been no promise and no detriment to Mallery Lumber.

[1]. Included in that amount was a charge of 872.41 for consulting services and expenses at a houseware show.

The Opinion of the Court below sustains its Order that Judgment for Mallery Lumber be entered on the pleadings on the grounds that the letter of June 8 was both a Letter of Credit and a continuing guaranty, and that The Bank was precluded by the doctrine of promissory estoppel from the contention that its undisclosed loan of July 6 and the ensuing payment to Mallery Lumber terminated any further obligation under the letter of June 8.

■ We agree with The Bank that the letter of June 8 was not a Letter of Credit as defined in the Uniform Commercial Code, 12A P.S. §§ 5–102/103.[2] It was neither so entitled, nor did it promise direct payment upon the production of appropriate documentation.

■ However, the terms of the letter indicate that it was a guaranty, unlimited in time, that The Bank would reserve $25,000 for the payment of purchases by B. & F. The legal parameters of a continuing guaranty are well summarized in 38 Am.Jur.2d, *Guaranty*, § 63 as follows:

A continuing guaranty contemplates a future course of dealings between the creditor and the principal debtor, usually extending over an indefinite period of time. In its inception, a continuing guaranty is an offer from the guarantor and is accepted by the creditor each time the creditor performs a specified act (such as extending credit to the debtor). An offer for a continuing guaranty is ordinarily effective until revoked by the guarantor or extinguished by some rule of law. At any period of time, therefore, the legal relation between the guarantor and the creditor involves both a contract (as to transactions between the creditor and principal debtor which have been completed) and an offer (as to future transactions between the creditor and principal debtor). When the continuing guaranty is thus properly analyzed, the offer to guarantee future obligations may be revoked by the guarantor, at least in the absence of a contrary provision in the guaranty instrument with the result that *the guarantor*

2. Now found at 13 Pa.C.S. §§ 5102–03.

*will not be liable to the creditor* on the latter's extension of credit to the debtor *subsequent to the receipt of notice of revocation.* However, revocation of the continuing guaranty does not affect liability for past transactions which have created a contractual relationship between guarantor and creditor. (Emphasis added).

The letter contains internal evidence that it was intended as a continuing or on-going commitment. The term "reserved for purchases" necessarily implies that the guaranty was to be a continuing one. This is confirmed by the statement that The Bank was establishing a "line of credit" of which the $25,000 reservation for Mallery Lumber was to be a part. A "line of credit" indicates a continuing relationship and a future course of dealings. The fact that The Bank put no terminal date on its commitment reasonably implies that it was to continue until revoked.

The interpretation of the letter as a continuing guaranty until notice of revocation has been received seems clear to us, but if it were in doubt, the letter would be strictly construed against The Bank. *Land Title Bank & Trust Co. v. Baron*, 341 Pa. 241, 247, 19 A.2d 62 (1941).

The Bank denies liability as a guarantor on the contention that the letter was not intended as a promise to Mallery Lumber and that The Bank received no consideration from Mallery Lumber.

We cannot accept either argument. The letter was not a copy of a letter sent to B. & F.; it was addressed directly to Mallery Lumber and its stated purpose was to induce Mallery Lumber to continue to extend credit to B. & F. The letter concluded with the statement: "We trust this will be sufficient to permit you to continue to serve the needs of our mutual customer". Otherwise, the line of credit would not meet the needs of B. & F. for a strengthening of its credit with Mallery Lumber, and The Bank would lose the sale of its B. & F. line of credit. The intent of the letter was to induce such a commitment from Mallery Lumber. In Mal-

lery Lumber's response to The Bank under date of June 10, it indicated that the letter "is acceptable for our needs", whereupon The Bank signed and returned the letter of June 8, thereby concluding a bilateral agreement that Mallery Lumber would sell on credit and The Bank would guarantee payment up to $25,000. Had the letter been informational only, the signature of The Bank officer would not have been necessary, and the letter would have been addressed to B. & F. with a copy to Mallery Lumber.

■ The Bank received consideration from Mallery Lumber in the latter's extension of credit which enabled The Bank to sell its line of credit to B. & F. Mallery Lumber has suffered a detriment in extending such credit to the extent of $21,714.36 to date.

■ But The Bank's promise of guaranty required no consideration to make it legally enforceable. The circumstances created a promissory estoppel which replaced the need for consideration. Promissory estoppel is a relatively new name for an equitable doctrine that has its roots in the English Yearbooks. The principle has been formulated in § 90 of the Restatement of The Law of Contracts as follows:

A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.

This statement of the doctrine is accepted as a correct statement of Pennsylvania law. *Berliner v. Bee Em. Mfg. Co.*, 383 Pa. 458, 460, 119 A.2d 65 (1966); *DiSante v. Russ Financial Co.*, 251 Pa.Super.Ct. 184, 188, 380 A.2d 439 (1977). The equitable history of this doctrine back to its common law origins, and its application in numerous Pennsylvania decisions, is detailed in *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938).

█ Consideration is not a prerequisite of promissory estoppel. As stated in *Fried*, 328 Pa. at 500, 196 A. 39.

[F]rom the earliest times there was recognized the principle that an estoppel might similarly arise from the making of a promise, *even though without consideration*, if it was intended that the promise be relied upon and in fact it was relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice. (Emphasis added).

Judge Leonard Hand rationalized Promissory Estoppel as a "recognized species of consideration" in *Porter v. Commissioner of Internal Revenue*, 60 F.2d 673, 675 (1932). Chief Justice Cardozo described it as "a substitute for consideration or an exception to its ordinary requirements" in *Allegheny College v. National Chautauqua County Bank*, 246 N.Y. 369, 373, 159 N.E. 173 (1927).

█ Every requirement of a promissory estoppel is present in this case. The Bank was the promissor and Mallery Lumber the promisee in the letter of June 8. The Bank promised that $25,000 would be reserved from the line of credit to pay for B. & F.'s purchases from Mallery Lumber. This promise was given to induce Mallery Lumber to sell to B. & F. on credit terms. Mallery Lumber accepted the proposal in its reply of June 10 and thereafter extended credit. Under the doctrine of promissory estoppel, this promise will be held to be binding if injustice can be avoided only by its enforcement. That is the situation here, for if the promise is not enforced, Mallery Lumber loses payment of $21,714.36 for lumber sold on the strength of that promise.

· We conclude that the letter of June 8 was a continuing guaranty made to Mallery Lumber by The Bank, and that The Bank, having failed to notify Mallery Lumber that it considered its obligation terminated, is bound by its promise of guaranty.

Affirmed.

CAVANAUGH, Justice, dissenting:

I dissent from the court's approval of the grant of judgment on the pleadings by the court below.[1] Judgment on the pleadings should be granted only when a case is clear and free from doubt. *Nevling v. Natoli*, 290 Pa.Super. 174, 434 A.2d 187 (1981). It must be shown that there is no genuine issue of material fact. *Coal Operator's Casualty Co. v. Charles T. Easterby & Co. Inc.*, 440 Pa. 218, 269 A.2d 671 (1970). The majority sustains the entry of judgment on the pleadings against United Penn Bank of Wilkes-Barre on the basis of the doctrine of promissory estoppel as set forth in the Restatement of Contracts, 2nd, § 90 and also that the appellant agreed to act as a guarantor. At the outset we note that if the appellant bank made any promise in this case there is nothing to indicate that such a promise was supported by consideration. Consideration is an essential ingredient of a contract and a promise unsupported by consideration is unenforceable in the absence of justifiable detrimental reliance by the promisee. *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228 (1978). However, under the doctrine of promissory estoppel consideration is not required to make a promise legally enforceable. Section 90 of the Restatement of Contracts, 2nd, provides:

§ 90. Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

We note that "[a]lthough the doctrine of promissory estoppel has become fully recognized in Pennsylvania, it is not to

1. I agree with the majority that the letter from the United Penn Bank of Wilkes-Barre, Pennsylvania, appellant, to Robert Mallery Lumber Corporation of June 8, 1977, does not constitute a letter of credit within the meaning of the Uniform Commercial Code.

be loosely applied; if it were, any promise, regardless of the complete absence of consideration, would be enforceable." *Fedun v. Mikes Cafe, Inc.*, 204 Pa.Super. 356, 368, 204 A.2d 776, 782 (1964). The doctrine of promissory estoppel is only used to enforce a promise unsupported by consideration in order to avoid injustice. *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A.2d 35 (1958). Our first inquiry in determining whether the doctrine of promissory estoppel applies is whether the letter of June 8, 1977 constituted a promise by the appellant bank to pay Robert Mallery Lumber Corporation a sum up to $25,000 for purchases by B. & F. Associates, if B. & F. Associates did not pay Mallery. The appellee, Robert Mallery Lumber Corporation, was aware of the necessity of proving an agreement by the appellant bank to pay for purchases by B. & F. Associates for it alleged in its complaint against B. & F. Associates and United Bank in paragraph XIX that the bank sent the letter of June 8, 1977 to Robert Mallery Lumber Company "promising and guaranteeing payment of up to $25,000 for lumber purchased from Robert Mallery Lumber Corporation by B. & F. Associates, Inc." Our reading of the letter of June 8, 1977 discloses no such promises and guarantees, so as to warrant the grant of judgment on the pleadings. The letter merely stated that a line of credit had been established and "$25,000 is reserved for purchases from Mallery Lumber Company." In my opinion the record before us is not so clear that we should hold as a matter of law that the bank made a promise that is legally enforceable without consideration.

Another requirement for the application of the doctrine of promissory estoppel is that there must be reliance by the promisee upon the promise resulting in prejudice to the promisee. *Department of Labor and Industry v. Unemployment Compensation Board of Review*, 203 Pa.Super. 262, 199 A.2d 735 (1964); *Harkins v. Zamichieli*, 266 Pa.Super. 401, 405 A.2d 495 (1979). In this case, the record does not show to what extent, if any, the appellee relied on the June 8, 1977, letter in continuing to extend credit as appellee was

paid the sum of $27,478.23 by B. & F. Associates on July 6, 1977, less than a month after the bank's letter was sent. Would this not cause the appellee to question whether the $25,000 "line of credit" was consumed? Even assuming that the bank's letter could be construed as a sufficient promise to pay the debt of B. & F. Associates the element of reliance by Robert Mallery Lumber is not clearly established.

The second thrust of the majority opinion is that the bank agreed to act as a guarantor for B. & F. Associates, Inc. Again, we are unable to find a clear promise by the bank to pay the obligations of B. & F. Associates if that company, which was the primary obligor, failed to do so. In *Atlanta Corporation v. Ohio Valley Provision Co.*, 263 Pa.Super. 374, 376, 398 A.2d 183, 184 (1979) a bank sent the following letter to a seller of goods:

> One of our valued customers, Ohio Valley Provision Company, has placed an order with your company in the amount of approximately $19,000.00 and we understand that you want a guarantee before releasing the meat products to them.
>
> "You may be assured that this amount will be paid by the above mentioned company within 10 days. This company has been a customer of ours since their organization and maintains substantial balances with us.
>
> s/K. W. Gundlach<br>President"

This court held that the letter from the bank did not constitute a guarantee of payment since it did not promise that the bank would pay the debt of the buyer. Similarly, in my opinion the appellant in this case did not unambiguously promise to act as guarantor of debts owed by B. & F. Associates to Robert Mallery Lumber Corporation. I would therefore direct that the judgment on the pleadings be reversed.